# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-KA-00099-SCT

*RONALD HOOD*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 12/19/2007 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TRENT L. WALKER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | JAMES H. POWELL, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/30/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE CARLSON, P.J., LAMAR AND CHANDLER, JJ.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Ronald Hood was convicted by a jury in the Circuit Court of Yazoo County of the crime of exploitation of children under Mississippi Code Sections 97-5-31 and 97-5-33(5) (Rev. 2006).  Hood was sentenced by the trial court as a habitual offender to twenty years in the custody of the Mississippi Department of Corrections without the possibility of parole. In today's appeal, Hood alleges certain errors committed in the trial court, none of which we find to have merit.  We thus affirm the judgment of conviction and sentence of the Circuit Court of Yazoo County.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.     On March 13, 2006, Melissa Hood, the defendant's wife, found a videotape with no title or other identifying information located in a box of her husband's belongings within an extra bedroom at their home. She decided to view the tape on her VCR to determine its contents. Melissa testified that when she witnessed the videotape she became sick to her stomach. The videotape depicted nude male children, and Melissa believed the children to be between the ages of five and seven years old. She showed the tape to her sister, who attempted to rip it up and threw it in the garbage.[1] Melissa's sister also confronted the defendant, Ronald Hood, about the contents of the tape. According to Melissa, Hood's response to why he had the tape was, "I've got it because I started the stuff." He also made the statement that, "if he had to, he would go back to California where it was legal so he could do it again." Melissa and her sister directed Hood to leave the home.

¶3.     Melissa further testified that, prior to their marriage, Hood admitted to possessing this type of videotapes and showed her a videotape of naked male children's exposed genitals. Melissa was shocked and told Hood, "if you're going to marry me, if you're going to live in my house, you've got to get rid of this stuff. I can't take this." He stated that he would get rid of it and would not bring it into her house.

¶4.     After again discovering similar material subsequent to her marriage to Hood, Melissa contacted Detective Larry Davis. Davis received the tape from Melissa, and he testified that

---

[1]The tape later was retrieved from the garbage and "fixed."

it contained images of "young boys in their nudity, running around." According to Davis, the boys appeared to be between the ages of ten and sixteen years old. Davis obtained a search warrant for a storage unit belonging to Hood. In the storage unit, law enforcement authorities discovered two small camcorder tapes and approximately one hundred VCR tapes.[2]

¶5.     On July 10, 2006, Ronald Hood was indicted for "exploitation of children" in violation of Mississippi Code Sections 97-5-31 and 97-5-33(5) (Rev. 2006). The indictment was amended to reflect Hood's status as a habitual offender. Subsequently, Hood was tried before a jury for exploitation of children in the Circuit Court of Yazoo County, Judge Jannie M. Lewis presiding. In addition to the videotape that Melissa turned over to Davis, one of the small camcorder tapes retrieved during the execution of the search warrant also was entered into evidence. On December 11, 2007, Hood was found guilty by the jury and sentenced by the trial court as a habitual offender to serve twenty years in the custody of the Mississippi Department of Corrections, without the possibility of parole. From this verdict and sentence, Hood appeals to this Court.

## DISCUSSION

¶6.     Hood presents four issues for this Court's consideration: (1) whether the marital privilege caused Melissa Hood to be incompetent to testify; (2) whether the males in the

---

[2]Interesting, law enforcement officials conducted a random check of some of the approximately one hundred VCR tapes, and a majority of these tapes were of the Little League World Series.

video were engaged in "sexually explicit conduct;" (3) whether the statutes in question are unconstitutionally vague; and (4) whether the prosecution made improper arguments which tended to inflame the passions and prejudices of the jury against the defendant.

¶7. The standard of review for admission of evidence is abuse of discretion. **Debrow v. State**, 972 So. 2d 550, 552 (Miss. 2007). However, when a question of law is raised, the applicable standard of review is de novo. **Id**. "[O]ur constitutional scheme contemplates the power of judicial review of legislative enactments; however, that power may be exercised affirmatively only where the legislation under review be found 'in palpable conflict with some plain provision of the . . . constitution.'" **State v. Roderick**, 704 So. 2d 49, 52 (Miss. 1997) (quoting **In re T.L.C.**, 566 So. 2d 691, 696 (Miss. 1990); **Hart v. State**, 87 Miss. 171, 176, 39 So. 523, 524 (1905)). In determining whether a lawyer made improper arguments which require reversal, the test is "'whether the natural and probable effect of the improper argument . . . create[s] an unjust prejudice against the [opposing party] result[ing] in a decision influenced by the prejudice so created.'" **Eckman v. Moore**, 876 So. 2d 975, 986 (Miss. 2004) (quoting **Davis v. State**, 530 So. 2d 694, 701-02 (Miss. 1988)).

¶8. Having already stated the issues which Hood presents for today's consideration, we now restate the issues for the sake of clarity in discussion.

## I. WHETHER THE MARITAL PRIVILEGE RENDERED MELISSA HOOD'S TESTIMONY INADMISSIBLE.

¶9. Hood argues that the testimony of his wife, Melissa, "should have been stricken as incompetent or subject to the marital privilege set out in M.R.E. 504." Even though Hood

4

injects spousal "incompetence" into his discussion of this issue, he does not cite the spousal

competency statute, Mississippi Code Section 13-1-5 (Rev. 2002).[3] Instead, Hood focuses

his argument on the husband-wife privilege found in Mississippi Rule of Evidence 504,[4] and

the general rule of competency found in Mississippi Rule of Evidence 601.

¶10.    Rule 504(b) states that "[i]n any proceeding, civil or criminal, a person has a privilege

to prevent that person's spouse, or former spouse, from testifying as to any confidential

communication between that person and that person's spouse." Miss. R. Evid. 504(b).

However, we find that an exception applies in today's case because "[t]here is no privilege

under this rule . . . in a proceeding in which one spouse is charged with a crime against (1)

the person of any minor child . . . ." Miss. R. Evid. 504(d). On the other hand, Hood asserts

---

[3]

> Husbands and wives may be introduced by each other as witnesses in all cases, civil or criminal, and shall be competent witnesses in their own behalf, as against each other, in all controversies between them. Either spouse is a competent witness and may be compelled to testify against the other in any criminal prosecution of either husband or wife for a criminal act against any child, for contributing to the neglect or delinquency of a child, or desertion or nonsupport of children under the age of sixteen (16) years, or abandonment of children. But in all other instances where either of them is a party litigant the other shall not be competent as a witness and shall not be required to answer interrogatories or to make discovery of any matters involved in any such other instances without the consent of both.

Miss. Code Ann. § 13-1-5 (Rev. 2002).

[4]"There are two areas of law which govern if and when one spouse may testify against the other, spousal competency and marital privilege. M.C.A. § 13-1-5 governs matters of spousal competency. On the other hand, marital privilege protects certain communications made during the marriage." Miss. R. Evid. 504 cmt.

5

that Rule 504 is in conflict with Mississippi Rule of Evidence 601, the general rule of competency. Rule 601 states:

> Every person is competent to be a witness except as restricted by the following:
>
> (a) In all circumstances where one spouse is a party litigant the other spouse shall not be competent as a witness without the consent of both, except as provided in Rule 601(a)(1) or Rule 601(a)(2):
> . . .
> (2) Either spouse is a competent witness and may be compelled to testify against the other in any criminal prosecution of either husband or wife for a criminal act against any child . . . .

Miss. R. Evid. 601(a).

¶11. In **Fisher v. State**, 690 So. 2d 268, 272 (Miss. 1996), this Court noted the difference between the marital privilege and spousal incompetency, stating: "Rule 601(a)(2) abolishes spousal incompetence to testify in certain circumstances. The non-offender spouse may be called to testify, but the other spouse may still invoke the privilege regarding confidential communications that do not fall into an exception set out in 504(d)." **Fisher**, 690 So. 2d at 272 (citing **Dycus v. State**, 396 So. 2d 23, 28 (Miss. 1981)). Conflict does not exist between these rules, and in today's case, spousal incompetence was not applicable because Hood was being prosecuted for "a criminal act against any child." *See* Miss. R. Evid. 601(a)(2). Also, Hood was unable to invoke the privilege regarding confidential communication because of the "crime against the person of any minor child" exception in Rule 504(d). *See* Miss. R. Evid. 504(d).

6

¶12. Hood, however, urges this Court to determine that the aforementioned exception in Mississippi Rule of Evidence 504(d) cannot apply in today's case, arguing that exploitation of children is not a "crime against the person of any minor child," and only those crimes specifically listed in Title 97, Chapter 3 of the Mississippi Code are such crimes. *Id.* This argument is without merit. In *Fisher*, this Court recognized that "Miss. R. Evid. 601(a)(2) indicates an obvious growing concern about sexual and violent abuse against children," and as a result, amended Rule 504(d) to "reflect the same." *Fisher*, 690 So. 2d at 272. Rule 504(d) was amended to reflect the same intentions as Rule 601(a)(2);[5] therefore, prosecution for "a criminal act against any child" absolves the husband-wife privilege as set out in Rule 504. There is no indication that Rule 504(d) was intended to apply only to the crimes listed in Title 97, Chapter 3 of the Mississippi Code, as crimes against persons, as Hood contends to this Court. Exploitation of children is a crime against the persons of minor children; therefore, the trial judge did not abuse her discretion in admitting Melissa's testimony.[6]

¶13. Furthermore, Mississippi Rule of Evidence 504 has no bearing on Melissa's testimony. Melissa testified about a conversation between herself and Hood that occurred before they were married; a conversation that also involved her sister; and a conversation that

---

[5]Rule 601 of the Mississippi Rules of Evidence is essentially the same as Mississippi Code Section 13-1-5, as amended. *See* Miss. Code Ann. § 13-1-5 (Rev. 2002).

[6]It must also be remembered that Melissa had a four-year-old son living in the home with her and Hood.

7

took place with Detective Davis, none of whom are protected by the marital privilege. All relevant conversations between Hood and Melissa occurred either before their marriage or in the presence of third persons. No protected confidential communication is at issue in today's case.

¶14. At trial, Melissa testified as follows regarding the first tape which she discovered prior to her marriage to Ronald Hood:

> Q:    Okay. All right. Now, I'm going to come back to that in a minute with that tape. But prior to that date, prior to March 16th of 2006, had you ever seen a tape or tapes like that one before?
>
> A:    Yes, sir, I did. Uh -- in November, when he was at his sister's trailer, out off of Dover Road, I was staying out there with them, helping him take care of his elderly sister that's in a wheelchair, we were sitting in his room watching TV, and I asked him what was in his, in the doors under where his TV was setting, and he told me it was his duffle bags and stuff, and that's when we started the conversation. And I'm like, "What stuff?" And he said, "There's tapes." I said, "Get one of them out and let me see what it is." He did, and when he put it in, I said, "Whoa! Hold." I said, "Unh-unh, I can't watch that. That's stomach turning." And I turned to him, and I said, "I've got a little one." I said, "If you're going to marry me, if you're going to live in my house, you've got to get rid of this stuff. I can't take this." And he said, "You don't got nothing to worry about. Before" – . . . .

Rule 504 states, "A communication is confidential if it is made privately by any person to that person's spouse and is not intended for disclosure to any other person." Miss. R. Evid. 504(a). Melissa's testimony about Hood's statements prior to their marriage, discussing the video of nude boys, is not covered by the husband-wife privilege, and the statements were admissible in evidence as statements against interest. Miss. R. Evid. 804(b)(3). The following exchange also took place at trial, during the State's direct examination of Melissa:

8

Q: And so then on March 13th, you found this tape?

A: Yes, sir.

Q: All right. Now, you were telling us that when you found it, the first thing you did was take it to your sister?

A: No, sir. I left it at my house, and I went to get my sister.

Q: Okay.

A: Took her back to my house, showed her what it was, and she got furious!

Q: Okay. What did she do after you showed it to your sister?

A: She took it out, she ripped it up, threw it in the garbage can, waited for him to come home, and she told him, said, "I've got a four-year-old nephew that I'm concerned about."

[DEFENSE COUNSEL] Objection, Your Honor, to hearsay.

THE COURT: Sustained.

[PROSECUTOR]: Don't say what your sister said.

Q: So she confronted him about the tape?

A: Right.

Q: Did Mr. Hood say anything in response to her?

A: To be honest with you, I don't recall.

Q: You don't recall him saying anything about the tape?

A: No, sir. The only thing that he did say is "I've got it because I started the stuff."

Q: Okay. At that point, what, if anything, was said to Mr. Hood about him remaining in the house?

A: She told him he had to get out.

[DEFENSE COUNSEL]: Objection to hearsay.

THE COURT: Sustained.

Q: Did Mr. Hood leave?

A: Yes, sir.

Q: What happened then?

A: Me and my sister went down to Mr. Larry Davis's office, and I told him what I had found, and I told him that my nephew had got the tape out of the garbage, fixed it, put it back together, and he come to my daddy's trailer and got it.

Q: And did you turn the tape over to Detective Davis?

A: Yes, sir, I did.

¶15. The conversation among Hood, Melissa, and Melissa's sister was not confidential, due

to the presence of a third party. "[T]he presence of another person, even a family member,

9

is deemed to mean that the communication was not intended to be confidential." ***Fanning v. State***, 497 So. 2d 70, 74 (Miss. 1986) (citations omitted). Further, statements Melissa made to the detective outside her husband's presence are not privileged. *See **Shell v. State***, 554 So. 2d 887, 894 (Miss. 1989). Rule 504 also does not require the suppression of the evidence retrieved as a result of Davis's discussion with Melissa. *See **Ladner v. State***, 584 So. 2d 743, 748 (Miss. 1991).

¶16. Based on our discussion, we find as a matter of law that Melissa was competent to testify against her husband, Ronald Hood, and that she was not prevented from testifying against her husband by the husband-wife privilege set out in Mississippi Rule of Evidence 504. The trial judge thus acted within her discretion in admitting the testimony of Melissa Hood. Accordingly, this issue is without merit.

## II. WHETHER THE MALES IN THE VIDEO WERE ENGAGED IN "SEXUALLY EXPLICIT CONDUCT."

¶17. Hood contends that this case is "fatally defective in that the children involved in the video at issue in this matter, while photographed in their naked state, are not engaged in sexually explicit behavior." Hood was indicted and convicted under Mississippi Code Sections 97-5-31 and 97-5-33(5), as amended. Section 97-5-33(5) states: "No person shall, by any means including computer, possess any photograph, drawing, sketch, film, video tape or other visual depiction of an actual child engaging in sexually explicit conduct." Miss. Code Ann. § 97-5-33(5) (Rev. 2006). Section 97-5-31 defines "'sexually explicit conduct'" as "actual or simulated: . . . (v) Lascivious exhibition of the genitals or pubic area of any

10

person . . . ." Miss. Code Ann. § 97-5-31 (Rev. 2006). Further, "'[s]imulated' means any depicting of the genitals or rectal areas that gives the appearance of sexual conduct or incipient sexual conduct." *Id.* As this Court has not adopted a test for determining whether a visual depiction of a child constitutes "lascivious exhibition of the genitals or pubic area," we look to other jurisdictions. The United States Court of Appeals for the Fifth Circuit applies the test of *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), *aff'd*, 813 F.2d 1231 (9th Cir. 1987). *United States v. Grimes*, 244 F.3d 375, 380 (5th Cir. 2001). *See also United States v. Carroll*, 190 F.3d 290, 297 (5th Cir. 1999). The factors to consider are as follows:

> 1. whether the focal point of the visual depiction is on the child's genitalia or pubic area;
> 2. whether the setting of the visual depiction is sexually suggestive, i.e. in a place or pose generally associated with sexual activity;
> 3. whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
> 4. whether the child is fully or partially clothed, or nude;
> 5. whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
> 6. whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Grimes*, 244 F.3d at 380 (citations omitted). This list is not exhaustive, and no single factor is dispositive. *Id*. *See also United States v. Knox,* 32 F. 3d 733, 746 (3d Cir. 1994). Also, the United States Court of Appeals for the Ninth Circuit stated:

> A lascivious exhibition is pornographic, even if not obscene, and is considered in the context of "the depictions . . . imposed . . . by the attitude of the viewer or photographer." *United States v. Arvin*, 900 F.2d 1385, 1391 (9th Cir. 1990). Accordingly, "applied to the conduct of children, lasciviousness is not a characteristic of the child photographed but of the exhibition which the

photographer sets up for an audience that consists of himself or likeminded pedophiles." ***United States v. Wiegand***, 812 F.2d 1239, 1244 (9th Cir. 1987). This focus results in a definition of lascivious that criminalizes images "so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur." ***Hill***, 459 F.3d at 972 (citation omitted).

***United States v. Banks***, 556 F.3d 967, 979-80 (9th Cir. 2009).

¶18.    Today, we adopt the above-enumerated ***Dost*** factors, which previously were adopted by the Fifth Circuit in ***Carroll***, 190 F.3d at 297, and reaffirmed by the Fifth Circuit in ***Grimes***, 244 F.3d at 380.  Having done so, and in applying the ***Dost*** factors to the record before this Court in today's case, we conclude that the jury was justified in its finding that the images it viewed depicted "sexually explicit conduct."  Also, this conduct can be actual or simulated lascivious exhibition of the genitals. *See* Miss. Code Ann. § 97-5-31.  One tape shows numerous close-ups of only the genitals of young boys.  The camera zooms in on the genital area and nothing else for extended periods of time, making that area the only focal point.  The other tape also shows children's genitals in almost every depiction and from numerous angles.  Sufficient evidence was before the jury for its findings that the videotape it viewed contained visual depictions of children engaging in sexually explicit conduct, or lascivious exhibition of genitals.  The jury was justified in its finding that the videos were clearly designed to elicit a sexual response in the viewer.  Further, as stated by the prosecutor during closing arguments:

> Now, in the videos we have just seen, we not only have exhibition of the genitals in every shot, in the context of particularly in the second two, all male to male, all young males of different ages in poses that are specifically for the camera and to display the genital area.  And in the last video that was taken, there is (sic) shots of every person who is posed in there of not only a photo

12

from a distance, but close-ups of the genital area, themselves, where nothing else can be seen after they go in these close ups, other than the genitals of the individuals involved.

. . .

These photographs certainly are for the purpose of stimulating lustfulness and sexual desire or sexual suggestive, which is all lascivious means. So those displays, themselves, there's no other reason to do the close up shots of the genitals only, other than for some sexual connotation, and that meets the definition of the statute.

The evidence before the jury undoubtedly justified a finding that the male children depicted in the videotapes were engaged in sexually explicit conduct. As such, this issue is without merit.

### III. WHETHER THE STATUTES IN QUESTION ARE UNCONSTITUTIONALLY VAGUE.

¶19. Hood argues that the statutes in question are unconstitutionally vague stating, "they do not give adequate notice as to what is meant by the term 'lascivious;'" therefore, he "was left to determine for himself whether the photos fell within the definition, and whether possession of the material in question was proscribed." This Court, however, has been "consistent in holding that we need not consider matters raised for the first time on appeal, which practice would have the practical effect of depriving the trial court of the opportunity to first rule on the issue, so that we can then review such trial court ruling under the appropriate standard of review." *Alexander v. Daniel*, 904 So. 2d 172, 183 (Miss. 2005). *See, e.g., Triplett v. Mayor & Aldermen of Vicksburg*, 758 So. 2d 399, 401 (Miss. 2000) (citing *Shaw v. Shaw*, 603 So. 2d 287, 292 (Miss. 1992)). *See also Patterson v. State*, 594

13

So. 2d 606, 609 (Miss. 1992). Thus, Hood's argument on appeal is procedurally barred due to his failure to assert it at the trial-court level.

**IV.  WHETHER THE PROSECUTION MADE IMPROPER ARGUMENTS WHICH TENDED TO INFLAME THE PASSIONS AND PREJUDICES OF THE JURY AGAINST THE DEFENDANT.**

¶20.    Hood asserts that the prosecution made comments during opening statements and closing arguments which had the effect of prejudicing the jury.  Hood contends that the following comments by the State during opening statements were improper: (1) "[T]he genital areas are exhibited for the purposes of the cameras;" and (2) "[I]n every instance, the camera drops down to the genital area.  So you don't see the faces of the boys.  You don't see anything but the genitals being shown.  And this goes on for about thirty minutes."  The record, however, reveals that no objections were made to the State's opening statements, and "[a]bsent a contemporaneous objection at the trial level as to a particular issue, that issue is waived on appeal."  *Jones v. State*, 856 So. 2d 285, 293 (Miss. 2003) (citing *Smith v. State*, 724 So. 2d 280 (Miss. 1998); *Whigham v. State*, 611 So. 2d 988, 995 (Miss. 1992)).  Alternatively, in considering the merits of Hood's contentions, there was nothing improper about the prosecutor's comments.  The prosecutor, during opening statements, merely informed the jury what he believed the evidence would show during the trial.  The tapes, which were later admitted into evidence, revealed that which the prosecutor had stated to the jury they would reveal.

14

¶21.    However, Hood further contends that these statements made by the prosecutor, when considered along with Melissa's improper inflammatory testimony, constitute error.  During her direct-examination testimony, in describing her sister's initial reaction to seeing the tape, Melissa stated: "She took it out, she ripped it up, threw it in the garbage can, waited for him to come home, and she told him, said, 'I've got a four-year-old nephew that I'm concerned about.'" Defense counsel made a hearsay objection to this statement, and the Court sustained the objection, whereupon the prosecutor admonished Melissa "[d]on't say what your sister said." There is no need to address the merits of whether this statement, made by Melissa's sister in Hood's presence, constituted hearsay, because, again, the prosecutor's comments made to the jury during opening statements were not contemporaneously objected to, nor can they in any way be deemed to be improper.  Thus, there can be no cumulative error.

¶22.    Hood further contends that the following statements made by the State during closing arguments were improper: "Will you tear him up when you get back there?" and in referring to the tapes of the Little League World Series, "that's his preferred age, and that's his preferred gender."[7]   During closing arguments, the prosecutor stated to the jury: "My question now is will you do what's right?  Will you follow the law? Will you follow the law? Will you tear him up when you get back there?  He needs to be found guilty of what he's

_____

[7]http://en.wikipedia.org/wiki/Little_League_World_Series. The Little League World Series is a baseball tournament held in August of each year in Williamsport, Pennsylvania, for children age eleven and twelve years old.  (Last accessed June 22, 2009.)

15

done." Hood alleges there is a cumulative prejudicial effect when one considers these alleged improper statements made by the prosecutor during closing arguments along with Melissa's testimony that when she and her sister confronted Hood about the tape, Hood stated that "if he had to, he would go back to California where it was legal so he could do it again." However, Hood objected to neither the prosecutor's statements during closing arguments, nor this testimony by Melissa during trial. Nor was there an objection to the prosecutor's statements during closing arguments pertaining to the Little League World Series and the "preferred age/preferred gender" comments. We thus consider this issue waived. *Jones*, 856 So. 2d at 293.

## CONCLUSION

¶23. For the reasons stated, the Yazoo County Circuit Court's judgment of conviction against Ronald Hood for the crime of exploitation of children and the resulting sentence of twenty years imprisonment as a habitual offender without the possibility of parole is affirmed.

¶24. **CONVICTION OF EXPLOITATION OF CHILDREN AND SENTENCE OF TWENTY (20) YEARS, AS A HABITUAL OFFENDER, WITHOUT THE POSSIBILITY OF PAROLE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**WALLER, C.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. DICKINSON, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J., DICKINSON AND CHANDLER, JJ.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND IN RESULT:**

16

¶25. Although I concur with Parts I, II, and IV of the majority's opinion, as well as with today's judgment, I do not join Part III because I would find that no procedural bar forbids Hood's challenge to the constitutionality of the statute under which he stands convicted.

¶26. Generally, an error that does not draw an objection in the trial court is deemed waived. We have held that this is true even for constitutional challenges; but where the challenge concerns a *fundamental* constitutional right, we will not allow a procedural omission to prevent our considering it. **Graves v. State**, 969 So. 2d 845, 846-47 (Miss. 2007). *See also* **Fuselier v. State**, 654 So. 2d 519, 522 (Miss. 1995).

¶27. The rights guaranteed under the First Amendment to the U.S. Constitution and Article 3, Section 13, of the Mississippi Constitution are fundamental rights. *See, e.g.*, **Gitlow v. New York**, 268 U.S. 652, 666, 45 S. Ct. 625, 69 L. Ed. 1138 (1925) ("[F]reedom of speech and of the press . . . are among the fundamental personal rights and 'liberties' protected by the due process clause of the Fourteenth Amendment from impairment by the states."). Likewise, criminal defendants enjoy a fundamental right to due process. *See, e.g.*, **Luckett v. State**, 582 So. 2d 428 (Miss. 1991). Because the conviction from which Hood filed this appeal stems from conduct implicating the First Amendment, *see* **Miller v. California**, 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973), and because the vagueness argument he presents is, at its core, a contention that he has been denied due process, we should analyze this assignment of error.

¶28. Despite this disagreement, I maintain my concurrence with the majority's judgment in this case because I conclude that the required analysis lends no aid to the appellant. The

U.S. Supreme Court has settled the point that, although some forms of pornography enjoy the protection of the First Amendment, *see id.*, child pornography is not among them. *New York v. Ferber*, 458 U.S. 747, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982).

¶29.    Hood contends that the term "lascivious," as used by Section 97-5-31 of the Mississippi Code to define the term "sexually explicit conduct" under Section 97-5-33, is unconstitutionally vague and that his conviction therefore violates the constitutional guarantee of due process. *See Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). The test for vagueness is whether a statute proscribing or requiring conduct does so "in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . . ." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926). For example, in *Smith v. Goguen*, 415 U.S. 566, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974), the high court voided for vagueness a Massachusetts statute that proscribed "contemptuous[ ]" treatment of the flag of the United States because the law failed "to draw reasonably clear lines between the kinds of nonceremonial treatment that are criminal and those that are not."[8] *Id.* at 574. On the other hand, in *Grayned*, 408 U.S. 104, the justices upheld an Illinois statute that proscribed disturbance of the peace on school campuses under the expectation that state courts would

---

[8] Obviously, the high court greatly abrogated this holding, as it relates to desecrations of the American flag, by ruling in 1989 that the First Amendment protects communicative destruction of the banner. *Texas v. Johnson*, 491 U.S. 397, 109 S. Ct. 2533, 105 L. Ed. 2d (1989). Nevertheless, the case remains an example relevant to the topic of the vagueness doctrine.

limit application of the law to conduct clearly unprotected by the First Amendment. *Id.* at 111-12. Although the *Grayned* Court recognized that the ordinance had been crafted by words of "flexibility and reasonable breadth, rather than meticulous specificity," *id.* at 110 (quoting *Esteban v. Central Missouri State College*, 415 F.2d 1077, 1088 (8th Cir. 1969)), the nation's highest court found no constitutionally fatal lack of specificity, concluding that "it is clear what the ordinance as a whole prohibits." *Id.*

¶30. Similarly, it is clear what Section 97-5-33 prohibits, particularly in light of the great lengths to which the U.S. Supreme Court has gone to identify the boundary between the realm of material protected by the First Amendment and material properly labeled constitutionally unprotected child pornography. *See, e.g.*, *Ferber*, 458 U.S. 747; *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S. Ct. 1389, 152 L. Ed. 2d 403 (2002); *United States v. Williams*, 553 U.S. ___, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008). As long as the language of the statute remains sufficiently clear that we are given no indication that this state's trial courts will apply their punitive power against constitutionally protected conduct, we should not apply the vagueness doctrine as Hood urges. Indeed, the record in this case reveals that Hood mentioned the possibility of relocating to a jurisdiction in which he believed his conduct would enjoy greater protection. Maj. Op. at ¶2. Therefore, not only can we say, in accordance with *Grayned*, that it is clear to us what Section 97-5-33 prohibits; apparently, it also was clear to Hood himself.

19

¶31. Therefore, I would find no merit in Hood's contention that he has been subjected to punishment under an unconstitutionally vague provision of law. But because I thought it important to address this issue, I concur in today's opinion in part and in its correct result.

**GRAVES, P.J., DICKINSON AND CHANDLER, JJ., JOIN THIS OPINION.**