# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-01323-SCT

*JERRY LAMAR WHITLOCK*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/07/2009 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: BENJAMIN ALLEN SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHANIE BRELAND WOOD |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/16/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., RANDOLPH AND KITCHENS, JJ.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Jerry Lamar Whitlock was convicted for the crime of attempted automobile burglary in the Circuit Court of Rankin County.  Whitlock was sentenced to life without parole as a habitual offender under Mississippi Code Section 99-19-83.  He appealed, alleging specific errors committed during the course of his trial. Finding Whitlock's assignments of error to be without merit, we affirm the judgment of the Rankin County Circuit Court.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     On August 5, 2005, Dottie Smith went to BankPlus in Flowood to obtain coin change for operating her business over the weekend.  As she exited the bank, Smith noticed that another vehicle was backed into the parking spot beside her vehicle.  Smith testified that she "thought it was kind of strange because all the other parking places were empty and they were backed in there next to me."  Smith proceeded to her car, unlocked the doors by remote, and placed her change bags on the back seat.  According to Smith, as she closed the back passenger door, she heard the driver's door of the other vehicle open.  Smith also found this strange. She locked all the doors of her vehicle with the remote.

¶3.     Smith testified that as she shut the door, she looked up and saw a man standing there, looking as if he was going into the bank.  They were between the two vehicles.  According to Smith, before she had the chance to unlock her door to enter her vehicle, the man placed his hand on her rear passenger door handle and pulled it.  While the man attempted to open her door, Smith ran to the back of the man's vehicle.  Realizing the door was locked, the man then yelled at her to unlock the door, and she replied "no."  Smith pushed the panic button on her remote which caused her car horn to blow.  The man then got back into his car and sped away. Since Smith was standing behind the man's vehicle, she was able to obtain his tag number.  She immediately ran into the bank, grabbed a deposit slip, and wrote the tag number on it.  As Smith was writing the tag number, she yelled that someone had just tried

to rob her. She gave the deposit slip with the tag number written on it to a bank employee who called 911.[1]

¶4. State Trooper Wayne Dearman was monitoring his radio systems at the time of the incident, and he received information that "[t]wo black males, attempted robbery at BankPlus." He also received a vehicle description and the tag number. While Trooper Dearman was writing the information on a notepad, the vehicle that was described passed him, and he was able to see part of the license plate. Trooper Dearman then initiated a traffic stop, and the vehicle turned into a driveway, where he pulled behind it. The driver exited the vehicle, so Trooper Dearman ordered him to the ground. The passenger acted as if he was exiting the vehicle to also get on the ground; however, according to Trooper Dearman, the man kicked off his flip-flops and ran. When Dearman attempted to get his radio, the other suspect also fled. Trooper Dearman was able to identify the clothing of both suspects.[2]

¶5. Officer Sentel Easterling of the Pearl Police Department heard Trooper Dearman on the radio requesting assistance, so he proceeded to the area. He observed a black male wearing the clothes Trooper Dearman had described attempting to gain entrance to a residence. Officer Easterling apprehended the man and handed him over to a Flowood police officer. The man was wearing a white tank top and dark colored shorts and was identified

---

[1] For the benefit of aiding law enforcement officials in locating and apprehending the perpetrator, Smith described the suspect as a black male wearing a white tank top and dark shorts.

[2] Trooper Dearman stated the passenger was wearing a white tank top and blue shorts, and the driver was wearing a white tee shirt and Hawaiian, or flower design, shorts.

3

as Jerry Lamar Whitlock.[3] Before being taken to the Flowood Police Department, Whitlock was taken to a mini storage facility where the complainant, Smith, positively identified him as the man who had attempted to break into her car.

¶6.    After a trial in the Circuit Court of Rankin County, Judge Samac S. Richardson presiding, the jury found Whitlock guilty of attempted automobile burglary. Judge Richardson sentenced Whitlock to a term of life imprisonment without parole as a Section 99-19-83 habitual offender. Likewise, Judge Richardson denied Whitlock's Motion for Judgment Notwithstanding the Verdict, or in the Alternative, for a New Trial. Aggrieved, Whitlock appeals to us.

## DISCUSSION

¶7.    Whitlock presents three issues for this Court's consideration: (1) whether the identification process was so impermissibly suggestive that Whitlock suffered irreparable misidentification; (2) whether Whitlock's sentence of life imprisonment without parole as an habitual offender for attempted automobile burglary is disproportionate to the crime and constitutes cruel and unusual punishment; and (3) whether the trial court erred in denying Whitlock's motion for a new trial because the verdict was against the overwhelming weight of the evidence.   The issues are restated for the sake of today's discussion.

**I.    WHETHER THE IDENTIFICATION PROCESS WAS SO IMPERMISSIBLY SUGGESTIVE THAT WHITLOCK SUFFERED IRREPARABLE MISIDENTIFICATION.**

---

[3]Later, the other suspect also was apprehended and identified.

4

¶8.    "The standard of review for admission of evidence is abuse of discretion.  However, when a question of law is raised, the applicable standard of review is de novo."  **Hood v. State**, 17 So. 3d 548, 551 (Miss. 2009) (citation omitted).  This Court's "standard of review for trial court decisions regarding pretrial identification is 'whether or not substantial credible evidence supports the trial court's findings that, considering the totality of the circumstances, in-court identification testimony was not impermissibly tainted.'" **Outerbridge v. State**, 947 So. 2d 279, 282 (Miss. 2006) (quoting **Roche v. State**, 913 So. 2d 306, 310 (Miss. 2005)).

¶9.    Whitlock asserts that the identification procedures performed by the police department were unfairly suggestive, and thus, all identification stemming from the show-up procedure should have been inadmissible at trial, including Smith's in-court identification of him before the jury.  The United States Supreme Court has stated that "'[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned,'" and this Court has "previously held that 'pretrial identifications which are suggestive, without necessity for conducting them in such manner, are proscribed.'" **Roche**, 913 So. 2d at 310-11 (citations omitted); *see also* **York v. State**, 413 So. 2d 1372, 1383 (Miss. 1982) (citations omitted) ("A showup in which the accused is brought by an officer to the eyewitness is likewise impermissibly suggestive where there is no necessity for doing so.").  However, our inquiry does not end with the presence of an impermissibly suggestive identification.  **Id**. at 311.  "Such identification is admissible if, considering the totality of the circumstances surrounding the identification procedure, the identification did not give rise to a very substantial likelihood of misidentification."  **Id**.

5

(citing *York*, 413 So. 2d at 1383 (quoting *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972))).

¶10.    In *Biggers*, the United States Supreme Court laid out the factors to consider in determining "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive":

> As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199.

¶11.    Before addressing the merits of this issue, we pause to set out here additional information concerning the procedural history of this case. Whitlock was tried three times on this attempted automobile burglary charge. The first two trials resulted in mistrials, and in the third trial, Whitlock was found guilty by the jury. Judge William E. Chapman, III, presided over the first trial, and Judge Samac S. Richardson presided over the second and third trials. In each of the three trials, Whitlock attempted to have excluded from evidence the victim's pretrial out-of-court identification of him shortly after the events which led to the grand-jury indictment.

¶12.    Prior to the first trial, Judge Chapman conducted a pretrial suppression hearing concerning the identification evidence. The victim, Smith, testified as to the events surrounding the crime, and her testimony at the suppression hearing was consistent with her

6

later testimony at the trial. At the conclusion of the suppression hearing, Judge Chapman applied the ***Biggers*** factors to the evidence before him and denied Whitlock's motion to exclude evidence of the victim's out-of-court identification of Whitlock shortly after the crime, and the victim's in-court identification of him during the trial. On this point, Judge Chapman stated:

> All right, yeah, I just wanted to refresh my recollection relative to these five factors. I mean it's clear [Smith] had ample opportunity to view the accused at the time of the crime. And based on her testimony, I'm convinced she had a pretty high degree of attention exhibited. It seems to me that there was no description in the, it appears to be no description in the statement. I've not read it, but she didn't point it out to you, but her testimony is she described to the law enforcement officer present. And I don't think there's any real dispute that her description of [Whitlock] to the law enforcement officer didn't match the defendant as he presented that night. My observation of her testimony was she was very certain about his identity, and it was a very short period of time.
>
> So I find all of those [factors] weigh in the State's favor. For those reasons, the motion to suppress the show-up will be denied, and also relative to the in-court identification.

¶13.    Although there was no requirement for him to do so, Judge Richardson, prior to the commencement of the second trial, revisited this issue and stated, "Judge Chapman ruled on that and ruled that that evidence was admissible and the posture I'm taking on it is that that was the correct ruling based on what was presented to the Court at that time."

¶14.    In today's case, according to Smith's trial testimony, she was standing close to Whitlock at the time of the incident and for a while she did not take her eyes off of him. She stated they were only inches apart, she had nothing obstructing her view, and Whitlock had nothing obstructing his face. Smith got a good look at Whitlock and stated that he was

7

wearing a white tank top and dark shorts. At the time of his arrest, Whitlock was wearing a white tank top and blue shorts. Smith was also a hundred percent sure that she did not confuse the two suspects, Whitlock and the other occupant of the vehicle. Smith testified that when she identified Whitlock at the storage facility, only about an hour after the incident, there was no doubt in her mind that he was, in fact, the man who had attempted to rob her.

¶15. As this Court stated in *York*,

> It can thus be observed that an accused who seeks to exclude identification testimony based upon an alleged due process violation faces a very heavy burden. Even though the pretrial identification is impermissibly suggestive, he must still show the conduct gave rise to a very substantial likelihood of irreparable misidentification.

*York*, 413 So. 2d at 1384. Here, Whitlock has not met this very high burden. When analyzing the *Biggers* factors, this Court cannot say, based on the circumstances surrounding the incident and show-up procedure, that "the conduct gave rise to a very substantial likelihood of irreparable misidentification." Thus, in today's case, we find no abuse of discretion in the trial court's admission of this identification evidence. This issue is without merit.

## II. WHETHER WHITLOCK'S SENTENCE IS DISPROPORTIONATE TO THE CRIME AND CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT.

¶16. Generally, a sentence will not be disturbed on appeal if it is within the limits prescribed by statute. *Gibson v. State*, 731 So. 2d 1087, 1097 (Miss. 1998) (quoting *Hoops v. State*, 681 So. 2d 521, 537-38 (Miss. 1996)) (citation omitted).

¶17.    Whitlock argues that a sentence of life imprisonment without parole as an habitual

offender for attempted automobile burglary is disproportionate to the crime and constitutes

cruel and unusual punishment.  The trial court sentenced Whitlock as an habitual offender

pursuant to Mississippi Code Section 99-19-83, which states:

> Every person convicted in this state of a felony who shall have been convicted
> twice previously of any felony or federal crime upon charges separately
> brought and arising out of separate incidents at different times and who shall
> have been sentenced to and served separate terms of one (1) year or more in
> any state and/or federal penal institution, whether in this state or elsewhere,
> and where any one (1) of such felonies shall have been a crime of violence
> shall be sentenced to life imprisonment, and such sentence shall not be reduced
> or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-83 (Rev. 2007).  At the sentencing hearing, evidence was presented

that Whitlock was previously convicted: (1) in 1978 in the Second Judicial District of

Harrison County, Cause Number 1672, for rape; (2) in 1978 in the Second Judicial District

of Harrison County, Cause Number 1673, for house burglary; (3) in 1978 in the Second

Judicial District of Harrison County, Cause Number 1674, for house burglary; (4) in 1978

in the First Judicial District of Harrison County, Cause Number 16308, for burglary; (5) in

1978 in the Second Judicial District of Harrison County, Cause Number 1268, for aggravated

assault; and (6) in 1997 in the First Judicial District of Harrison County, Cause Number

B2401-97-00394, for robbery.

¶18.    Whitlock was sentenced to and served terms of one year or more in a state penal

institution on each of these felony convictions, and at least one of these felonies was a crime

of violence.  In fact, Whitlock's prior convictions involved at least three crimes of violence

9

– rape,[4] aggravated assault[5] and robbery.[6] Thus, it is clear that Whitlock met the criteria to be sentenced as an habitual offender to life imprisonment without parole under Section 99-19-83.[7]

¶19.    Whitlock still maintains that when conducting a proportionality analysis by applying the factors set forth in **Solem v. Helm**, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983), the conclusion is that Whitlock's sentence is constitutionally disproportionate to his offense. *See also* **Harmelin v. Michigan**, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991). This Court also has stated that "'[i]n light of **Harmelin**, it appears that **Solem** is to apply only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality.'" **Hoops**, 681 So. 2d at 538 (quoting **Smallwood v. Johnson**, 73 F.3d 1343, 1347 (5th Cir. 1996) (citing **Harmelin**, 501 U.S. at 1005)). The Mississippi Court of Appeals recently held that a **Solem** analysis was not

---

[4]**Hughes v. State**, 892 So. 2d 203, 211 (Miss. 2004) (rape, other than statutory rape, i.e., consensual, nonviolent sex, is a crime of violence).

[5]**Smith v. State**, 877 So. 2d 369, 387 (Miss. 2004) (aggravated assault is a felony involving violence).

[6]**Magee v. State**, 542 So. 2d 228, 236 (Miss. 1989) ( robbery is a crime of violence).

[7]The sentences for Cause Numbers 1672, 1673, 1674, 16308, and 1268 were all served concurrently. However, this Court has stated: "The question, thus, is whether serving one year or more on concurrent sentences for separate convictions amounts to serving more than one year on each sentence. We hold that it does." **Magee v. State**, 542 So. 2d 228, 236 (Miss. 1989).

required in affirming a life sentence without parole pursuant to Section 99-19-83 for

attempted burglary of an automobile, stating:

> It is clear that under the facts of this case if Hawkins were found guilty of the charge of attempted burglary of an automobile, he could be sentenced as a habitual offender under section 99-19-83, as he has one previous conviction for robbery and two for burglary. It is well established that "[s]entencing is within the complete discretion of the trial court and [is] not subject to appellate review if it is within the limits prescribed by statute." **Hoops**, 681 So. 2d at 537 (citing **Reynolds v. State**, 585 So. 2d 753, 756 (Miss. 1991)). We find no merit to this issue, as Hawkins's sentence was within the statutory limits. Thus, no further analysis pursuant to **Solem** is required.

**Hawkins v. State**, 11 So. 3d 123, 129 (Miss. Ct. App. 2008). As in **Hawkins**, Whitlock's

sentence unquestionably was within the limits prescribed by statute, and there is no need for

further analysis. As such, this issue is without merit.

### III.   WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶20.   In Whitlock's final assignment of error, he asserts that the trial court erred in denying

his motion for a new trial because the verdict was against the overwhelming weight of the

evidence. Thus, our standard of review is as follows:

> [This Court] must "accept as true the evidence which supports the verdict and [we] will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction "unconscionable injustice."

**Smith v. State**, 802 So. 2d 82, 86 (Miss. 2001) (quoting **Crawford v. State**, 754 So. 2d 1211,

1222 (Miss. 2000)). "It is a fundamental principle of law that a jury verdict will not be

disturbed except in the most extreme of situations. 'Only in those cases where the verdict

11

is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.'" ***Coleman v. State***, 926 So. 2d 205, 208-09 (Miss. 2006) (citations omitted).

¶21.    Whitlock contends that a new trial is warranted because Smith stated that the driver of the vehicle had attempted to rob her, but when Trooper Dearman pulled the vehicle over, Whitlock was the passenger. According to Whitlock, this testimony is conflicting; however, we must compare Smith's testimony to the testimony of Investigator Jerry McCue of the Flowood Police Department. Investigator McCue testified that it came to law enforcement's attention through the other occupant of the vehicle that the suspects had made a stop prior to being pulled over by Trooper Dearman. Reasonable jurors logically could infer that the two occupants of the vehicle had swapped positions during this stop. Whitlock also argues that due to the weather, Smith's perception of the individual she saw at the bank could have been inaccurate. However, "the jury is the sole judge of the credibility of witnesses, and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict." ***Billiot v. State***, 454 So. 2d 445, 463 (Miss. 1984) (citing ***Harrigill v. State***, 381 So. 2d 619, 623 (Miss. 1980); ***Gathright v. State***, 380 So. 2d 1276, 1278 (Miss. 1980); and ***Gangloff v. State***, 134 So. 2d 481 (1961)). In today's case, Smith provided substantial and believable testimony that Whitlock was indeed the man who had attempted to burglarize her vehicle. She asserted that she had gotten a good look at him with nothing obstructing her view, and she testified to being a hundred percent sure that she did not confuse the two suspects.

12

¶22. Whitlock further asserts that no scientific evidence was admitted showing Whitlock was the person who attempted to rob Smith. This Court, however, has found that "'the testimony of a single uncorroborated witness is sufficient to sustain a conviction.'" ***Derouen v. State***, 994 So. 2d 748, 752 (Miss. 2008) (quoting ***Williams v. State***, 512 So. 2d 666, 670 (Miss. 1987)). The record before this Court contains substantial and believable evidence that Whitlock committed the crime of attempted automobile burglary, and the trial court did not abuse its discretion in failing to grant a new trial. This issue is without merit.

**CONCLUSION**

¶23. Based on our discussion today, we affirm the Rankin County Circuit Court's judgment of conviction for attempted automobile burglary and sentence of life imprisonment without parole under Mississippi Code Section 99-19-83, entered against Jerry Lamar Whitlock.

¶24. **CONVICTION OF ATTEMPTED AUTOMOBILE BURGLARY AND SENTENCE OF LIFE IMPRISONMENT, WITHOUT PAROLE OR PROBATION, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE SHALL NOT BE REDUCED OR SUSPENDED.**

**WALLER, C.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY.**