ROBERTS, J.,
for the Court:
¶ 1. After a jury trial in the Winston County Circuit Court, codefendants Quan-taurus Parks and Sianquiz Kentrez Willis (a/k/a Sianquis Kentrez Willis) were found guilty of three counts of armed robbery. Parks and Willis were sentenced to serve thirty years in the custody of the Mississippi Department of Corrections (MDOC) in each count. The sentences in Counts II and III were ordered to run concurrently with the sentence in Count I. Parks filed a motion for a new trial or, in the alternative, a motion for a judgment notwithstanding the verdict on May 23, 2011. Willis filed his motion for a new trial on *773 May 31, 2011. The circuit court denied both motions. This appeal ensued.
FACTS AND PROCEDURAL HISTORY
¶ 2. On the evening of November 11, 2010, Tonnee Holmes, Charles Alexander Burton, and Charles Dillon Arney were leaving the parking lot of the Westside Apartments, where Holmes lived, when two men approached their truck. The two men, later identified as Parks and Willis, asked for cigarettes or to let them “hold something.” Parks was standing by the driver’s side window, and Willis had moved to the passenger side. Parks and Willis then pulled guns on Holmes, Burton, and Arney. Parks, holding a gun to Burton’s forehead, forced Burton out of the truck. Finding only change in Burton’s pockets, Parks threw the change back in Burton’s face. Burton testified that Parks may have also taken a black knife clipped to Burton’s pocket, but that he did not actually see him take it. On the other side of the truck, Willis had forced both Holmes and Arney out of the truck and onto the ground. Willis searched them and took approximately $25 to $30 from them.
¶ 3. Following the incident, Holmes, Burton, and Arney provided written statements to the police. Burton and Arney testified that they did not know the names of the two men who robbed them until police officers told them the men’s names based on Holmes’s identification of the men. Burton testified he was only shown a photographic lineup including Willis, and he was not shown one including Parks. Arney did not have an opportunity to view a pretrial lineup to identify Willis and Parks as the robbers. Holmes testified that he recognized Willis from his neighborhood but only knew him by his nickname; he recognized Parks only as someone he had seen before. Holmes admitted that he did not know the real and proper names of either Parks or Willis and that the police provided him with that information after he identified them. However, Holmes, Burton, and Arney all testified unequivocally at trial that they recognized Willis and Parks as the men who robbed them. After Burton indicated that the codefendants approached his truck that night and robbed him, the following exchange took place between Burton and the State:
State: And sitting here in court today, you point these two gentlemen out [ (Parks and Willis) ]. You are saying to the jury that those are [the] two gentlemen that walked up to the truck initially?
Burton: Yes, sir.
State: Are you mistaken about that at all?
Burton: No, sir.
At trial, Holmes was also asked to identify the men who had robbed them.
State: Who were the two people that came up to the vehicle[;] are they in the courtroom today?
Holmes: They are here.
[[Image here]]
State: All right. And would you point them out, the two people that walked up to the vehicle. You said they are here. Point them out.
Holmes: Right there.
State: The two defendants?
Holmes: Yes.
Lastly, Arney also identified both Parks and Willis at trial as the men who had robbed them. The following exchange took place at trial:
State: All right. Well, you said two individuals were walking up to the truck. And you pointed in this direction. Do you see those two individ *774 uals that walked up to the truck in the courtroom here today?
Arney: Yes, sir.
State: Could I have you point them out for me.
Arney: Them (sic) two. (pointing)
State: Which two? There [are] a bunch of[,] at least fíve[,] individuals sitting at [the] table.
[[Image here]]
Arney: [The individuals in the s]triped shirt and black Polo shirt.
¶ 4. Parks and Willis were indicted on March 30, 2011, on three counts of armed robbery. A jury trial was held on May 18, 2011, with Parks and Willis as codefen-dants. As was briefly described above, the State provided the testimony of Holmes, Burton, and Arney. The defense presented no witnesses. The jury returned a verdict against Parks and Willis on all three counts of armed robbery. The circuit court ordered Parks and Willis to serve thirty years in the custody of the MDOC on all three counts. The thirty-year sentences in Counts II and III were ordered to run concurrently to the thirty-year sentence in Count I. Following unsuccessful post-trial motions, Parks and Willis executed the current appeal.
¶ 5. On appeal, they raise the same argument: Whether the witnesses’ identification of Parks and Willis was impermissibly tainted, unreliable, and violative of due process and controlling ease law because the police revealed their identities to the witnesses.
STANDARD OF REVIEW
¶ 6. “The standard of review for admission of evidence is abuse of discretion.” Whitlock v. State, 47 So.3d 668, 671 (¶ 8) (Miss.2010) (quoting Hood v. State, 17 So.3d 548, 551 (Miss.2009)). Questions of law receive a de novo review. Id. On appeal, the “standard of review for trial court decisions regarding pretrial identification is ‘whether or not substantial credible evidence supports the trial court’s findings that, considering the totality of the circumstances, in-court identification testimony was not impermissibly tainted.’ ” Id. at 672 (quoting Outerbridge v. State, 947 So.2d 279, 282 (¶ 8) (Miss.2006)).
ANALYSIS
¶ 7. Parks and Willis make a single argument on appeal. They allege that the witnesses’ identification of them as the robbers was tainted and, therefore, impermissible at trial. According to their briefs, there was no pretrial identification procedure attempted. Instead, the police simply told the witnesses who the suspects were, and the witnesses just pointed to them at trial. Further, the first time the witnesses were asked to identify the men who robbed them was at trial while Parks and Willis were sitting at the defendants’ table, six months after the incident. They argue that by identifying them only at an “in-trial show up,” this procedure was grossly and impermissibly suggestive.
¶ 8. In McQuarter v. State, 574 So.2d 685, 687 (Miss.1990), Charles McQuarter claimed that a witness’s in-court identification of him was tainted because she had been unable to identify him until trial. He claimed that she was able to identify him because he was the only black male sitting inside the courtroom railing; thus, her identification of him was clearly suggestive and prejudicial. Id. The supreme court held that this issue was not preserved for appeal because McQuarter’s attorney failed to object to this identification at trial. Id. at 687-88. “Unless [a] timely and specific objection is made to allegedly improper testimony, the objection is deemed waived and may not be raised on appeal.” Id. (citations omitted). *775 Later, in Smith v. State, 724 So.2d 280, 321 (¶¶ 167-68) (Miss.1998), the supreme court found that Jerome Smith’s failure to make a contemporaneous objection to suggestive in-court identifications barred him from raising the issue for the first time on appeal. Recently, this Court has also addressed the issue. In Banks v. State, 36 So.3d 492, 493 (¶5) (Miss.Ct.App.2010), Ronson Banks argued that the “show up” identification used by the police was unfairly suggestive and, therefore, inadmissible. However, this Court found that Banks waived his objection to the identification testimony when he failed to object to the issue at trial. Id. It is established precedent that a “failure to object is fatal for purposes of preserving error for appeal” because the trial court did not have an opportunity to rule on the issue. Id. (citations omitted).
¶ 9. Similar to the above-cited cases, a review of the record before us reveals a lack of any contemporaneous objection by either codefendant to the identification of Parks and Willis as the robbers. Because there was no objection to the identification and no opportunity for the trial court to address the issue, this Court will not decide this issue on appeal.
¶10. THE JUDGMENT OF THE WINSTON COUNTY CIRCUIT COURT OF CONVICTIONS OF THREE COUNTS OF ARMED ROBBERY AND SENTENCES OF THIRTY YEARS IN COUNT I, THIRTY YEARS IN COUNT II, AND THIRTY YEARS IN COUNT III, WITH THE SENTENCES IN COUNTS II AND III TO RUN CONCURRENTLY TO THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WINSTON COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.