Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 17, 2019

**2019 CO 53**

**No. 17SC66, *People In the Interest of T.B.*—Juvenile Delinquency—Sexual Exploitation of a Child Statute—Erotic Nudity.**

In this case, the supreme court is asked to determine whether a juvenile can be adjudicated delinquent under the sexual exploitation statute, section 18-6-403(3), C.R.S. (2018), for possessing sexually explicit nude photos of two underage girls. A person commits sexual exploitation of a child under section 18-6-403(3), if, as relevant here, he or she knowingly "possesses or controls any sexually exploitative material for any purpose." § 18-6-403(3)(b.5). "Sexually exploitative material" includes any photograph that depicts a child engaged in "explicit sexual conduct," which includes "erotic nudity." § 18-6-403(2)(e), -(2)(j), C.R.S. (2018). The statute defines "erotic nudity" as "the display" of certain intimate body parts "for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved." § 18-6-403(2)(d).

The supreme court holds that section 18-6-403(3) need not be read to limit sexually exploitative material to images that depict "an act or acts of sexual abuse" of a child. Such a limitation is neither warranted by the plain language of the statute nor required to avoid

First Amendment concerns. The court additionally holds that section 18-6-403(3) contained no exception for juvenile sexting behavior at the time of the conduct at issue.

The court further holds that the sexually explicit content of the nude photos and the circumstances surrounding their creation here, including the juvenile's repeated requests for them, demonstrate they were made for his "overt sexual gratification." Thus, the trial court properly deemed the photos erotic nudity for purposes of the sexual exploitation statute.

Accordingly, the supreme court affirms the judgment of the court of appeals upholding the juvenile's adjudication.

**2019 CO 53**

**Supreme Court Case No. 17SC66**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA1142

**Respondent:**

The People of the State of Colorado,

**In the Interest of**

**Petitioner:**

T.B.

**Judgment Affirmed**
*en banc*
June 17, 2019

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
Kevin E. McReynolds, Assistant Attorney General
    *Denver, Colorado*

**Attorneys for Petitioner:**
Lord Law Firm, LLC
Kathleen A. Lord
    *Denver, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.
**JUSTICE GABRIEL** dissents, and **JUSTICE HART** joins in the dissent.

¶1 Sexting,[1] which includes the sending of sexually explicit digital images by cell phone, has become common in our society, especially among teenagers. Approximately one in four teenagers has received a "sext" and approximately one in seven has sent one. Sheri Madigan, et al., *Prevalence of Multiple Forms of Sexting Behavior Among Youth: A Systemic Review and Meta-analysis*, 172 JAMA Pediatrics 4, 327, 327 (2018); *see also* The National Campaign to Prevent Teen & Unplanned Pregnancy, *Sex and Tech: Results from a Survey of Teens and Young Adults* 1 (2008), available at https://perma.cc/E8PX-BEJD. In this case, a juvenile texted a picture of his erect penis to two underage girls and then repeatedly asked the girls to text him naked pictures of themselves. After initially resisting, both girls eventually complied and texted nude selfies[2] to the juvenile. The juvenile kept these sexts on his cell phone, where they were discovered by law enforcement in 2013. The question here is whether the juvenile can be adjudicated delinquent for sexual exploitation of a child under section 18-6-403(3), C.R.S. (2018),[3] for possessing these images.

---

[1] "Sexting" is "the sending of sexually explicit messages or images by cell phone." Sexting, *Merriam Webster* (2019), available at https://perma.cc/88GT-HEUP.

[2] A "selfie" is "an image that includes oneself (often with another person or as part of a group) and is taken by oneself using a digital camera especially for posting on social networks." Selfie, *Merriam-Webster* (2019), available at https://perma.cc/RTD2-D3EN.

[3] We cite to the current statutes because the relevant provisions have remained unchanged since 2012 except where noted in this opinion.

¶2     Under section 18-6-403(3)(b.5), a person commits sexual exploitation of a child if he knowingly "possesses or controls" any "sexually exploitative material" for any purpose. "Sexually exploitative material" includes any photograph that depicts a child engaged in "explicit sexual conduct," which includes, as relevant here, "erotic nudity." § 18-6-403(2)(e), -(2)(j), C.R.S. (2018). The statute defines "erotic nudity" as "the display" of certain intimate body parts "for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved." § 18-6-403(2)(d).

¶3     In response to growing public concern over teen sexting, the General Assembly enacted H.B. 17-1302, which took effect in January 2018. This bill created, among other lower-level offenses, the civil infraction of "exchange of a private image" by a juvenile. Under this new offense, a juvenile who knowingly possesses a sexually explicit image of another person who is at least fourteen years old or less than four years younger than the juvenile, and who reasonably believes the depicted person transmitted the image or otherwise agreed to its transmittal, commits a civil infraction punishable by a fine of up to $50 or participation in a program addressing the risks and consequences of such behavior. § 18-7-109(3)(b), -(5)(c), C.R.S. (2018). Notably, H.B. 17-1302 established that any juvenile whose behavior is limited to the elements of the civil infraction is not subject

3

to prosecution for sexual exploitation of a child under section 18-6-403(3)(b)[4] or -(3)(b.5). § 18-6-403(3.5), C.R.S. (2018).

¶4     But the acts at issue here predate these changes in the law.

¶5     In 2013, officers discovered four sexually explicit selfies on the cell phone of fifteen-year-old T.B. Three images depicted seventeen-year-old E.H. nude. The other image depicted fifteen-year-old L.B. topless, with a towel wrapped around her waist. Based on T.B.'s possession of these images, the prosecution filed a petition in delinquency charging him with two counts of possession of sexually exploitative material under section 18-6-403(3)(b.5) and naming E.H. and L.B. as victims. At a bench trial, T.B. argued that the prosecution failed to prove that he knowingly possessed erotic nudity for the purpose of the overt sexual gratification of a "person involved." § 18-6-403(2)(d). The court rejected this argument and adjudicated T.B. delinquent on both counts.

¶6     T.B. challenged his adjudication on appeal, repeating his contention that the photographs did not depict erotic nudity. In addition, he argued for the first time that to avoid First Amendment concerns, the sexual exploitation statute must be read to apply only to images depicting "acts of sexual abuse," and that under this proper reading, the evidence was insufficient to convict him. He also contended that the legislature did not intend section 18-6-403 to apply to juveniles.

---

[4] Under subsection (3)(b), a person commits sexual exploitation of a child if he knowingly "[p]repares, arranges for, publishes, . . . produces, . . . makes, . . . or distributes . . . any sexually exploitative material." § 18-6-403(3)(b), C.R.S. (2018).

4

¶7    In a published, split ruling, the court of appeals affirmed T.B.'s adjudication. *People In Interest of T.B.*, 2016 COA 151M, __ P.3d __. The majority concluded that T.B. was a "person involved" for the purposes of the statute, and that because the photographs he possessed were created for the purposes of his sexual gratification, sufficient evidence supported the trial court's finding that they contained erotic nudity. *Id.* at ¶¶ 30–35. Two judges rejected T.B.'s unpreserved statutory interpretation argument, although for different reasons and applying different standards of review. *Id.* at ¶¶ 36–45; *id.* at ¶¶ 78–86 (Bernard, J., concurring). The third dissented, reasoning that the General Assembly never intended section 18-6-403 to reach consensual exchanges of images between juveniles. *Id.* at ¶¶ 87–101 (Fox, J., dissenting).

¶8    We granted T.B.'s petition for a writ of certiorari to determine the proper standard of review for an unpreserved sufficiency of the evidence claim and to review whether the court of appeals misconstrued section 18-6-403(3)(b.5) in holding the evidence was sufficient to support T.B.'s adjudication for sexual exploitation of a child.[5]

---

[5] We granted certiorari review of the following issues:

1. [REFRAMED] Whether the court of appeals correctly applied de novo review to the defendant's unpreserved sufficiency of the evidence challenge to his adjudication for sexual exploitation of a child.

2. [REFRAMED] Whether the court of appeals misconstrued section 18-6-403(3)(b.5), C.R.S. (2012), in concluding that the evidence was sufficient to support the juvenile defendant's adjudication for sexual exploitation of a child.

¶9 We need not address the standard of review that applies to T.B.'s unpreserved sufficiency of the evidence claim because we reject his contention that, to avoid First Amendment concerns, section 18-6-403(3) must be read to limit sexually exploitative material to images that depict "an act or acts of sexual abuse of a child." We also reject T.B.'s arguments that the legislature must have implicitly intended in section 18-6-403 to carve out an exception for juveniles engaged in sexting behavior. We further hold that the sexually explicit content of the photos and the circumstances surrounding their creation, including T.B.'s direct solicitation of them, demonstrate they were made for the purpose of T.B.'s "overt sexual gratification." Thus, sufficient evidence supports the trial court's conclusion that the images constituted "erotic nudity" (and therefore "sexually exploitative material") for purposes of the sexual exploitation of a child statute. Accordingly, we affirm the judgment of the court of appeals upholding T.B.'s adjudication.

## I. Facts and Procedural History

¶10 In September 2012, fifteen-year-old T.B. met seventeen-year-old E.H. and fifteen-year-old L.B. at a Future Farmers of America conference. T.B., E.H., and L.B. all lived in different towns. After the conference, T.B. stayed in contact with both girls by phone and text message. Both E.H. and L.B. considered themselves to be romantically involved with T.B. at different points during their correspondence.

¶11    E.H. and L.B. testified that T.B. sent each of them a selfie of his erect penis.[6] Thereafter, T.B. repeatedly asked both girls for sexually explicit pictures of themselves, badgering them until they complied with his requests. In the fall of 2012, E.H. texted T.B. three nude photographs of herself. In two of these photos, E.H. is curled up in a corner with her knees drawn up against her body; the photos depict E.H.'s face and upper torso, including her bare breasts. The third photo depicts E.H. standing near a bathroom shower, covering her breasts with one arm and revealing the profile of her nude body turned away at a slight angle. During the spring of 2013, L.B. texted T.B. one photograph of herself. In this photo, taken in a bedroom mirror, L.B. appears topless, with a towel wrapped around her waist. The focal point of the photo is L.B.'s breasts; her face is not revealed.

¶12    After T.B.'s arrest on unrelated sexual assault charges in March 2013, police seized T.B.'s cell phone and discovered the nude photographs of E.H. and L.B. The People filed a petition in delinquency, charging T.B. with two counts of sexual exploitation of a child under section 18-6-403(3)(b.5), C.R.S. (2012), and several other counts related to the alleged sexual assault. The court granted T.B.'s request to sever the sexual exploitation counts, and a jury ultimately acquitted T.B. of the other counts.

---

[6] This photograph of T.B. does not appear in the record. E.H. testified that she deleted the photograph after receiving it, and L.B testified that she did not recall what she had done with the photograph.

¶13 At his bench trial on the sexual exploitation charges, T.B. argued that the state failed to prove that the images depicted "erotic nudity" as required by section 18-6-403(3)(b.5). The court rejected this contention and found that the prosecution had proven both counts of sexual exploitation beyond a reasonable doubt. The court adjudicated T.B. delinquent, sentenced him to concurrent, two-year terms of juvenile sex offender probation, and required him to register as a sex offender.

¶14 T.B. appealed, reasserting that the evidence was insufficient to support his adjudication. First, he contended that the images did not depict erotic nudity. Second, relying on language in the legislative declaration to section 18-6-403, T.B. argued for the first time that the sexual exploitation statute must be interpreted to apply only to images that depict the sexual abuse of a child, and that under this interpretation, the evidence was insufficient to support his adjudication.

¶15 In a divided opinion, the court of appeals rejected both claims. *People In Interest of T.B.*, 2016 COA 151M, __ P.3d __. The majority, applying factors adopted by another division of the court of appeals in *People v. Gagnon*, 997 P.2d 1278 (Colo. App. 1999), determined that sufficient evidence supported the trial court's conclusion that the photographs of E.H. and L.B. constituted erotic nudity. *Id.* at ¶¶ 30–35. The court observed that the images focused on the girls' breasts and E.H.'s pubic area and suggested a sexual coyness. *Id.* at ¶ 33. Further, the court concluded, the images were created for the overt sexual gratification of T.B., who repeatedly asked the girls for the photos after sending them a picture of his erect penis. *Id.* at ¶ 34.

8

¶16     As to T.B.'s new sufficiency of the evidence claim grounded in his argument that section 18-6-403(3)(b.5) applies only to images that depict the sexual abuse of a child, the panel split, producing three separate opinions. Judge Richman reviewed the unpreserved claim de novo under the standards set forth in *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005) (reviewing the record de novo to determine whether the evidence, viewed in the light most favorable to the prosecution, was substantial and sufficient in both quantity and quality to support the defendant's guilt beyond a reasonable doubt). *Id.* at ¶¶ 18–19. He rejected T.B.'s argument for two reasons. First, he reasoned that the statute does not import the term "sexual abuse" from the legislative declaration into the definitions of "sexually exploitative material," "explicit sexual conduct," or "erotic nudity." *Id.* at ¶ 38 (citing § 18-6-403(2)(d), (e), (j)). Because the statute is unambiguous, he concluded, it is applied as written and the court need not engage in further statutory analysis by considering the legislative declaration. *Id.* at ¶¶ 38–41. Second, Judge Richman reasoned, even if the court considered the legislative declaration, T.B.'s interpretation could not prevail because a legislative declaration cannot override a statute's elements. *Id.* at ¶¶ 42–43 (citing *People v. Enea*, 665 P.2d 1026 (Colo. 1983)).

¶17     Judge Bernard specially concurred, applying plain error review to T.B.'s unpreserved sufficiency claim. *Id.* at ¶ 79 (Bernard, J., concurring). He reasoned that T.B.'s new interpretation of section 18-6-403(3)(b.5) was not obvious, and therefore declined to address it on the merits. *Id.* at ¶¶ 82–86.

¶18     Judge Fox dissented. Like Judge Richman, she reviewed T.B.'s new sufficiency claim de novo, *id.* at ¶ 92 n.4 (Fox, J., dissenting), but concluded that section 18-6-403 was

not intended to reach "imprudent or irresponsible behavior by and among juveniles." *Id.* at ¶ 87. The Children's Code, Judge Fox reasoned, reflects the General Assembly's intent to "treat juveniles differently" and acknowledges that "[i]nexperience [and] less education . . . make the teenager less able to evaluate the consequences of his or her conduct." *Id.* at ¶ 89 (quoting *Thompson v. Oklahoma*, 487 U.S. 815, 835 (1988) (plurality opinion)). By contrast, she reasoned, the purpose of child pornography laws is to "prevent the abuse of children necessarily present in the making of child pornography." *Id.* at ¶ 92. Given these differing purposes, Judge Fox concluded that to charge teen sexting as sexual exploitation of a child under section 18-6-403(3)(b.5), "blatantly disregard[s] the purpose and intent" of the statute. *Id.* at ¶ 92. Additionally, Judge Fox concluded that section 18-6-403(3)(b.5) lacks "minimal guidelines" to avoid discriminatory or arbitrary enforcement, pointing out that the male recipient of the photos in this case faced charges, whereas the female teens who produced the images and sent them faced no legal consequences. *Id.* at ¶ 93 (quoting *City of Chicago v. Morales*, 527 U.S. 41, 60 (1999)).

¶19 Not long after the court of appeals issued its opinion in this case, the General Assembly enacted H.B. 17-1302. This bill sought to address juvenile sexting behavior through the creation of new, lower-level offenses of posting and possessing private images by a juvenile, and the civil infraction of exchange of a private image by a juvenile. Ch. 390, sec. 1, 2017 Colo. Sess. Laws, codified at § 18-7-109, C.R.S. (2018). The bill took effect January 1, 2018, and applies to offenses committed on or after that date.

10

¶20    We granted T.B.'s petition for a writ of certiorari to review the court of appeals' ruling affirming his adjudication for sexual exploitation of a child.

## II. Analysis

¶21    T.B. argues that section 18-6-403(3)(b.5) does not apply to the teenage texting of nude selfies at issue here.  He challenges the sufficiency of the evidence underlying his adjudication on two grounds, only one of which was preserved below.  First, relying on language from the legislative declaration in section 18-6-403(1.5), C.R.S. (2018), T.B. argues that to qualify as "sexually exploitative material," an image must depict the "sexual abuse of a child."  This claim was not preserved.  Though T.B. makes clear that he does not claim that the statute is unconstitutional as applied to him, he nevertheless posits that his narrowed interpretation of section 18-6-403 is required to avoid First Amendment concerns.  Second, resurrecting the claim he did preserve below, T.B. argues that the evidence is insufficient to support his adjudication because the photographs in his possession did not contain "erotic nudity," as defined in section 18-6-403(2)(d).

¶22    We need not address what standard of review governs T.B.'s unpreserved sufficiency claim because we reject his contention that, to avoid First Amendment concerns, section 18-6-403(3) must be read to limit sexually exploitative material to images that depict "an act or acts of sexual abuse of a child."  We conclude that the "sexual abuse" language T.B. points to from the legislative declaration does not modify the elements of the offense of sexual exploitation of a child or its associated definitional provisions, nor must we import such a limitation to avoid facial overbreadth concerns. We also reject T.B.'s contention that the legislature must have implicitly intended to carve

11

out an exception in section 18-6-403 for a juvenile's possession of sexually exploitative materials, observing that the recent statutory changes enacted in H.B. 17-1302 bolster our conclusion that the law in effect at the time of T.B.'s conduct did not contemplate any such exception. We next examine whether the photographs in T.B.'s possession constitute "erotic nudity" under section 18-6-403(2)(d) and conclude that they do. Because the sexually explicit content of the photos and the circumstances surrounding their creation, including T.B.'s direct and repeated solicitation of them, demonstrate they were made for the purposes of T.B.'s "overt sexual gratification," we conclude the trial court properly considered them erotic nudity for purposes of the sexual exploitation statute. Accordingly, we affirm the judgment of the court of appeals upholding T.B.'s adjudication.

## A. Standard of Review

¶23 We review questions of statutory interpretation de novo. *Finney v. People*, 2014 CO 38, ¶ 12, 325 P.3d 1044, 1049. In interpreting a statute, we seek to "effectuate the intent and purpose of the General Assembly." *People v. G.S.*, 2018 CO 31, ¶ 15, 416 P.3d 905, 909. We read the statute as a whole, construing its provisions consistently and in harmony with the overall statutory design. *Id.*, 416 P.3d at 910. To discern the legislature's intent, we first look to the plain language of a statutory provision. *Id.* Where the statutory language is clear, we apply the plain and ordinary meaning of a provision. *Id.*

¶24 When assessing a sufficiency of the evidence claim, we review the record de novo to determine whether the evidence, when viewed in the light most favorable to the

12

prosecution, was "substantial and sufficient" to support a reasonable juror's conclusion of guilt beyond a reasonable doubt. *People v. Perez*, 2016 CO 12, ¶ 9, 367 P.3d 695, 697 (quoting *Dempsey*, 117 P.3d at 807).

¶25    T.B.'s new sufficiency of the evidence claim—grounded in his interpretation of section 18-6-403(3)(b.5)—was not preserved below. We recently held in *McCoy v. People*, 2019 CO 44, ¶ 26, __P.3d__, that sufficiency of the evidence claims may be raised for the first time on appeal and that appellate courts should review unpreserved sufficiency claims de novo. Here, however, the standard of review that applies to this claim makes no difference because, as discussed below, we reject his interpretation of the statute. In short, T.B.'s sufficiency claim fails regardless of whether it is reviewed de novo or under the plain error standard.

## B. Section 18-6-403: The Sexual Exploitation of a Child Statute

¶26    A person commits sexual exploitation of a child, if, as relevant here, he or she knowingly "possesses or controls any sexually exploitative material for any purpose." § 18-6-403(3)(b.5).[7]    Before 2018, the statute did not contain the express exception for

---

[7] Possession or control of sexually exploitative material is only one means of committing sexual exploitation of a child. Under section 18-6-403(3), a person also commits sexual exploitation of a child if he or she knowingly "causes, induces, entices, or permits a child to engage in . . . explicit sexual conduct for the making of any sexually exploitative material," § 18-6-403(3)(a); "[p]repares, arranges for, publishes, . . . produces, . . . makes, . . . or distributes . . . any sexually exploitative material," § 18-6-403(3)(b); "[p]ossesses with intent to deal in, sell, or distribute . . . any sexually exploitative material," § 18-6-403(3)(c); or "[c]auses, induces, entices, or permits a child to engage in . . . explicit sexual conduct for the purpose of producing a performance," § 18-6-403(3)(d).

juvenile offenders now found in section 18-6-403(3.5) (providing that a juvenile's conduct that is limited to the elements of the civil infraction of exchange of a private image by a juvenile under section 18-7-109(3) is not subject to prosecution under subsection (3)(b) (making or distributing sexually exploitative material) or (3)(b.5) (possessing or controlling such material)).

¶27　The statute defines "sexually exploitative material" to include "any photograph . . . that depicts a child engaged in, participating in, observing, or being used for explicit sexual conduct." § 18-6-403(2)(j). In turn, "explicit sexual conduct" includes, as relevant here, "erotic nudity." § 18-6-403(2)(e). "Erotic nudity" means:

> *the display of the human male or female genitals or pubic area*, the undeveloped or developing genitals or pubic area of the human male or female child, *the human breasts*, or the undeveloped or developing breast area of the human child, *for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved.*

§ 18-6-403(2)(d) (emphases added).

¶28　In sum, as relevant here, a photograph constitutes "erotic nudity" (and therefore "sexually exploitative material") under section 18-6-403 if it (1) displays the breasts or pubic area of a child, (2) for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved. § 18-6-403(2)(d), (e), (j).

### C. "Sexually Exploitative Material" under Section 18-6-403 Need Not Depict an Act of Sexual Abuse of a Child

¶29　T.B. contends that section 18-6-403 must be interpreted to limit "sexually exploitative materials" to images that depict "an act or acts of sexual abuse of a child."

He derives this limitation from section 18-6-403(1.5), one of two legislative declaration provisions accompanying the statute.

¶30    The original legislative declaration, section 18-6-403(1), C.R.S. (2018), states that "the sexual exploitation of children constitutes a wrongful invasion of the child's right to privacy and results in social, developmental, and emotional injury to the child[,]" and that to protect children from sexual exploitation, "it is necessary to prohibit the production of material which involves or is derived from such exploitation and to exclude all such material from the channels of trade and commerce."

¶31    In section 18-6-403(1.5), added in 1988, the General Assembly further declared that "the mere possession or control of any sexually exploitative material results in continuing victimization of our children" because "such material is a permanent record of *an act or acts of sexual abuse of child*," and that "each time such material is shown or viewed, the child is harmed."  § 18-6-403(1.5) (emphasis added).  Notably, this provision also states that to stop *both* the "sexual exploitation *and* abuse" of children, it is necessary to ban the possession of sexually exploitative materials.  *Id.* (emphasis added).  Finally, it declares that the state has a compelling interest in outlawing the possession of such material in order to "protect society as a whole" as well as "the privacy, health, and emotional welfare of its children."  *Id.*

¶32    T.B. argues that the legislative declaration in section 18-6-403(1.5) narrows the substantive elements of the statute.  That is, under his reading, the possession of sexually exploitative material under section 18-6-403(3)(b.5) must be limited to possession of images that depict "an act or acts of sexual abuse of a child."  He contends that under this

15

interpretation, the evidence here was insufficient to support his adjudication for sexual exploitation because the selfies of E.H. and L.B. do not depict acts of child sexual abuse.[8]

¶33     We reject T.B.'s reading of the statute. As set forth above, section 18-6-403(3)(b.5) required the People to prove that T.B. knowingly possessed "sexually exploitative material." The statute defines "sexually exploitative material" to mean any photograph that depicts a child engaged in "explicit sexual conduct," a term that includes "erotic nudity." § 18-6-403(2)(e), (2)(j). "Erotic nudity" means the display of the pubic area or the breasts of a child "for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved." § 18-6-403(2)(d). Significantly, none of these substantive or definitional provisions in the statute incorporate the phrase, "acts of child sexual abuse," and we decline to read such a limitation into them. Indeed, we have previously held that language in the legislative declaration to the sexual exploitation statute does not "alter the elements of the crime" of sexual exploitation of a child. *People v. Enea*, 665 P.2d 1026, 1029 (Colo. 1983) (holding that proof of "social, developmental, or emotional injury to the child" referenced in the legislative declaration is not an element of the crime of sexual exploitation of a child). Although our decision in *Enea* construed an earlier version of the statute, its reasoning still holds here. Consistent with that decision, we hold that the additional legislative declaration in subsection (1.5) likewise

---

[8] T.B. does not attempt to define what constitutes "an act or acts of sexual abuse of a child."

16

does not narrow or otherwise modify the actual elements of the offense of sexual exploitation of a child found in subsection (3) of the statute or its associated definitional provisions in subsection (2). In short, based on the plain language of the statute, we conclude that the unlawful possession of "sexually exploitative materials" under section 18-6-403 does not require proof that the material depicts "an act or acts of sexual abuse of a child."

¶34     We also reject T.B.'s contention that his reading of section 18-6-403(3)(b.5) is necessary to avoid constitutional infirmities. Specifically, he argues that section 18-6-403(3)(b.5) must be construed to include a "sexual abuse" element to avoid violating the First Amendment because the creation of teenage nude selfies is constitutionally protected speech to the extent that the images are neither obscene nor the product of abuse.[9] However, "the canon of constitutional avoidance has no application in the absence of statutory ambiguity." *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 484 (2001). Because the language of section 18-6-403(3)(b.5) is clear and unambiguous, we need not resort to the canon of constitutional avoidance here. *People v. Flippo*, 159 P.3d 100, 106 n.11 (Colo. 2007).[10]

---

[9] In presenting his constitutional avoidance argument, T.B. makes clear that he does *not* claim that section 18-6-403 is unconstitutional as applied to him.

[10] In any event, we rejected a facial overbreadth challenge to this statute in *People v. Batchelor*, 800 P.2d 599, 601–03 (Colo. 1990). We acknowledged in that case that depictions of child nudity, without more, are constitutionally protected expression, *id.* at 601 (citing *New York v. Ferber*, 458 U.S. 747, 765 n.18 (1982)), and that statutes prohibiting child pornography must be sufficiently narrow to avoid criminalizing an intolerable range of

17

## D. Neither the Internet Luring Statute nor H.B. 17-1302 Requires a Different Outcome Here

¶35    Alternatively, T.B. claims that the General Assembly never intended section 18-6-403 to apply to his conduct in this case. He points to section 18-3-405.4, C.R.S. (2018) (the internet luring statute) to argue that the legislature must have implicitly intended in section 18-6-403 to carve out an exception for juveniles engaged in sexting behavior.

¶36    The internet luring statute criminalizes "knowing[ly] importun[ing], invit[ing], or entic[ing] through [electronic] communication" "a person who the actor knows or believes" to be under fifteen years old to expose or touch their own intimate parts or observe the actor's intimate parts. §18-3-405.4(1). Under this statute, the actor must be at least four years older than the minor for internet luring to constitute a crime. *Id.*

¶37    T.B. argues that if the legislature recognized a close-in-age exception for juveniles in the internet luring statute, then it must have implicitly intended to create a similar exception in the sexual exploitation statute. We disagree. Section 18-6-403 contains no language purporting to create a close-in-age exception for juveniles, despite multiple amendments to the statute over the last twenty years. If anything, the comparative

---

protected expressive conduct, *id.* at 601–02 (citing *Osborne v. Ohio*, 495 U.S. 103, 112 (1990)). Importantly, we observed that the statute limits "erotic nudity" (as a form of "explicit sexual conduct") to the displays of a child's breasts or pubic area that are made "for the purpose of overt sexual gratification or stimulation of one or more of the persons involved." *Id.* at 602; § 18-6-403(2)(d). We therefore concluded that section 18-6-403 is sufficiently limited to avoid concerns of facial overbreadth. *Id.* at 603.

18

absence of such language in the sexual exploitation statute compels us to conclude that the legislature did not intend to establish any exception for a juvenile's conduct under this provision. *See Turbyne v. People*, 151 P.3d 563 (Colo. 2007) ("We do not add words to the statute or subtract words from it.").

¶38 The legislative declaration to the juvenile sexting bill, H.B. 17-1302, bolsters our conclusion that section 18-6-403 contained no exception for a juvenile's possession of sexually exploitative material before the enactment of that bill. The legislature expressly acknowledged that, under then-current law, "when a juvenile engages in sexting behavior, usually the only available offense with which to charge that juvenile is sexual exploitation of a child." H.B. 17-1302, § 1(1)(a). Therefore—indeed, apparently for that very reason—it was necessary to provide law enforcement with the ability to charge lower-level offenses or civil infractions as well as to provide diversionary programs that could more appropriately address juvenile sexting behavior. *Id.*, § 1(1)(b), (2).

¶39 Section 18-7-109, the new provision created by H.B. 17-1302, implements a tiered approach to a juvenile's posting, possession, or exchange of sexually explicit images of minors who are at least fourteen years old or less than four years younger than the juvenile. Possessing a sexually explicit image of another teenager with the reasonable belief that the depicted person either transmitted the image or agreed to its transmittal (T.B.'s conduct here), now constitutes the civil infraction of "exchange of a private

19

image."[11] § 18-7-109(3). Possessing a sexually explicit image of another teenager without that person's permission is chargeable as a petty offense, § 18-7-109(2), C.R.S. (2018), but is a class 2 misdemeanor if the juvenile has ten or more separate images depicting three or more separate persons. § 18-7-109(5)(b). Posting a sexually explicit image of another teenager without consent is a class 2 misdemeanor, § 18-7-109(5)(a), but becomes a class 1 misdemeanor if, for example, committed with intent to coerce, intimidate or otherwise cause emotional distress to the depicted person, § 18-7-109(5)(a)(I).

¶40     Finally, H.B. 17-1302 added subsection (3.5) to section 18-6-403, which provides that a juvenile's conduct that is limited to the elements of the petty offense of possession of a private image under section 18-7-109(2) or the civil infraction of exchange of a private image under section 18-7-109(3) is "not subject to prosecution" for sexual exploitation of a child under section 18-6-403(3)(b) (making or distributing sexually exploitative material) or section 18-6-403(3)(b.5) (possessing or controlling sexually exploitative material). This new language in section 18-6-403(3.5) further confirms our conclusion

--------

[11] T.B. does not suggest that section 18-7-109 should be applied retroactively to his conduct. He also does not contend that the new statute gives rise to any equal protection claim—nor could he. In the criminal law context, Colorado's unique equal protection doctrine applies "only when 'the same conduct is proscribed in two statutes, and different criminal sanctions apply.'" *People v. Young*, 859 P.2d 814, 816 (Colo. 1993). But T.B.'s conduct was never proscribed by two different statutes at the same time. Finally, T.B. does not challenge the statute on vagueness grounds, nor does he raise any claim of selective enforcement. In fact, immediately before they testified at trial, both girls were advised of their Fifth Amendment privilege against self-incrimination and warned that they could be subject to prosecution under state or federal law for their possession of the photo of T.B.'s erect penis.

that a juvenile's conduct was prosecutable under section 18-6-403(3)(b) or -(3)(b.5) before the enactment of H.B. 17-1302, and that the statute contained no exception for a juvenile's possession of sexually exploitative material before the enactment of that bill.

¶41    In sum, T.B.'s claim that section 18-6-403 cannot be understood to apply to a juvenile's conduct is without merit. If anything, the legislative declaration to section 18-6-403 makes clear that the statute is fundamentally concerned with the "privacy, health, and emotional welfare of [the state's] children," § 18-6-403(1.5), and that the sexual exploitation of children amounts to a "wrongful invasion of the child's right to privacy, and results in social, developmental, and emotional injury to the child," § 18-6-403(1). Nothing in the legislative declarations to section 18-6-403 suggests that such harms are lessened or do not exist merely because the sexually exploitative material is made, possessed, or distributed by a juvenile rather than an adult.

## E.  The Images Here Constituted "Erotic Nudity"

¶42    Next, T.B. argues that the evidence was insufficient to support his adjudication because the images he possessed do not depict "erotic nudity." Again, we disagree. As discussed above, a photograph constitutes "erotic nudity" (and therefore "sexually exploitative material") under section 18-6-403 if it (1) displays the breasts or pubic area of a child, (2) "for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved." § 18-6-403(2)(d), (e), (j). T.B. does not dispute that the images in his possession display the breasts or pubic area of a child. Instead, he argues that the images do not qualify as erotic nudity because the displays

21

were not done for the purpose of the "overt sexual gratification" of a "person involved."

We disagree.

## 1. The Images Were "For the Purpose of Real or Simulated Overt Sexual Gratification or Stimulation"

¶43    In examining whether a photograph displaying the genitals, pubic area, or breasts of a child is "for the purpose of real or simulated overt sexual gratification or stimulation," federal case law is instructive. Under federal child pornography law, a visual depiction of a child's anus, genitals, or pubic area constitutes "sexually explicit conduct" when it is a "lascivious exhibition" of those body parts. 18 U.S.C. § 2256(2)(A)(v), -(8)(A). "Lascivious" is defined as "tending to excite lust." *Lascivious*, Black's Law Dictionary (10th ed. 2014). The federal statute's reference to "lascivious" exhibitions is thus comparable to the language in section 18-6-403(2)(d), "for the purpose of . . . sexual gratification."

¶44    In *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), a federal court articulated a non-exhaustive list of factors to assess whether an image of a minor is "a lascivious exhibition of the genitals or pubic area": (1) whether the focal point of the image is the child's genitalia or pubic area; (2) whether the setting of the image is sexually suggestive; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the child's age; (4) whether the child is fully or partially clothed, or nude; (5) whether the image suggests sexual coyness or a willingness to engage in sexual activity; (6) whether the image is intended or designed to elicit a sexual response in the viewer. Under the *Dost* approach, not all of these factors must be present for an image to

22

be considered lascivious; whether the image is lascivious must be based on the overall content of the depiction, taking into account the age of the child. *Id.*

¶45    Many federal and state courts have adopted these factors or some version of them,[12] including a division of our court of appeals in *Gagnon*, 997 P.2d at 1282 (using the *Dost* factors to assess whether a picture is for the purposes of real or overt sexual gratification or stimulation of one or more of the persons involved). Here, the division applied the *Dost* factors to assess whether the images possessed by T.B. were for the purpose of the sexual gratification of a person involved. *People In Interest of T.B.*, __ P.3d at ¶¶ 32–33 (citing *Gagnon*, 997 P.2d at 1281–82)

¶46    We conclude that the *Dost* factors provide a useful general framework for analyzing whether an image is the kind the General Assembly intended to encompass within its definition of "erotic nudity" for purposes of the sexual exploitation of a child

---

[12] Federal courts that have adopted the *Dost* factors include *United States v. Amirault*, 173 F.3d 28, 32 (1st Cir. 1999); *United States v. Rivera*, 546 F.3d 245, 250 (2d Cir. 2008); *United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989); *Sims v. Labowitz*, 877 F.3d 171, 182 (4th Cir. 2017) (*overruled on other grounds*); *United States v. Carroll*, 190 F.3d 290, 297 (5th Cir. 1999) (*overruled on other grounds*); *United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009); *United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999); and *United States v. Wolf*, 890 F.2d 241, 247 (10th Cir. 1989). State courts that have also adopted some version of these factors include *Cummings v. State*, 353 Ark. 618, 629 (2003); *Illinois v. Lamborn*, 708 N.E. 2d 350, 354–55 (1999); *Purcell v. Kentucky*, 149 S.W.3d 382, 392 (Ken. 2004); *Massachusetts v. Rex*, 469 Mass. 36, 44 (2014); *Hood v. Mississippi*, 17 So.3d 548, 555 (Miss. 2009); *Nebraska v. Smith*, 292 Neb. 434, 463 (2016); *New Hampshire v. Lopez*, 162 N.H. 153, 156 (2011); *New Mexico v. Myers*, 146 N.M. 128, 135 (2009); *South Dakota v. Dubois*, 2008 S.D. 15, ¶ 35 (2008); and *Utah v. Bagnes*, 2014 UT 4, ¶ 42 (2014).

statute. Therefore, borrowing from the *Dost* factors, we hold that when assessing whether a photograph displaying the genitals, pubic area, or breasts of a child was "for the purpose of real or simulated overt sexual gratification or stimulation" under section 18-6-403(2)(d), a reviewing court should examine whether the display appears to be intended or designed to elicit a sexual response. In conducting this analysis, a court should consider:

1) whether the focal point of the depiction is on the breasts, genitals, or pubic area of the child;

2) whether the setting, pose, or attire depicted is sexually suggestive, considering the age of the child; and

3) whether the depiction appears staged to suggest a willingness to engage in sexual activity.

These factors are not exclusive, and a court may determine that an image is "for the purpose of real or simulated overt sexual gratification or stimulation" under section 18-6-403(2)(d) without satisfying all of the factors.

¶47 Applying these factors here, we conclude the photographs in this case were intended or designed to elicit a sexual response. Two of the photographs of E.H. depict her curled up, with her knees pulled in against her body and her breasts exposed. The other photograph of E.H. depicts her nude profile, and the photograph appears to have been taken in a bathroom mirror. The photograph of L.B. depicts her with a towel around

24

her torso, with her breasts exposed.[13] The focal point of these photos is the girls' breasts—and in the profile photo of E.H., her pubic area. The girls' poses all appear staged to be sexually suggestive. All the photos suggest a willingness to engage in sexual activity. Because the content of the photos reflect they were intended or designed to elicit a sexual response, we conclude the displays of the girls' breasts and E.H.'s pubic area were "for the purpose of real or simulated overt sexual gratification or stimulation."

### 2. T.B. Was a "Person Involved" for the Purposes of Section 18-6-403(2)(d)

¶48 The statutory definition of erotic nudity further requires that the sexual gratification or stimulation be of "one or more of the persons involved." § 18-6-403(2)(d). The question is whether T.B. qualifies as a "person involved" under this provision. We conclude he does.

¶49 In *People v. Batchelor*, we recognized that a person "involved" for whose sexual gratification the material is made need not be depicted in the material itself. 800 P.2d at 604. In that case, the defendant was charged with making sexually exploitative material under section 18-6-403(3)(b) for posing his sleeping nine-year-old daughter in erotic positions and taking several instant snapshots of her. *Id.* at 600, 604–05. The defendant argued that because the child victim in the photograph was not in a condition of real or

---

[13] The court of appeals describes this photograph as depicting "L.B.'s shirt [being] pulled down below her breasts, exposing them." *T.B.*, 2016 CA 151M, ¶ 33. However, neither E.H. nor L.B. is wearing a shirt in any of the photographs.

simulated sexual gratification or stimulation, the photographs did not constitute erotic nudity. *Id.* at 603. We disagreed, reasoning that the statute "simply does not require that the 'real or simulated overt sexual gratification or stimulation' be depicted in the material." *Id.* at 604. Rather, the requisite overt sexual gratification "may be of any of the persons involved in the activity" and that "[t]he person (or persons) 'involved' are not always depicted in the material." *Id.*

¶50 There, we considered the defendant to be a "person involved" because he was "the maker of the photograph" and the photos were for his overt sexual gratification. *Id.* But in reaching that conclusion, we did not construe the phrase "a person involved" in section 18-6-403(2)(d) as necessarily limited to persons who physically manipulate a child subject or operate a camera. The provision contains no such express limitation. Further, we relied not simply on the fact that the defendant operated the camera, but that he posed his daughter in erotic positions. *Id.* at 605. In other words, the defendant was "involved" in creating their erotic character, the purpose of which was his own sexual gratification. *Id.*

¶51 Under our reasoning in *Batchelor*, there is no meaningful difference between a defendant who physically manipulates a child into an erotic pose and photographs her for the purpose of his own overt sexual gratification, and one who instead verbally instructs that child to assume the same erotic pose and take a nude selfie for the same purpose. In both situations, the defendant is "involved" in the creation of the resulting erotic images for the purpose of the defendant's sexual gratification.

26

¶52    And for that matter, in today's digital age, we discern no principled distinction between a defendant who stands in the room with a minor, directing her to pose in erotic positions for nude photographs for the defendant's overt sexual gratification, and a defendant who uses electronic media to solicit or orchestrate such photographs. A defendant can be as intimately involved with the creation of images depicting erotic nudity through a smartphone or computer as he is while standing in the room with the child. Conversations can occur in real time or near-real time through text messages and online chat services. And video and image services such as Facetime, Snapchat, and Instagram Video Chat permit real-time visual and audio communication.

¶53    Here, ample evidence in the record establishes that the photographs were made for the purpose of T.B.'s overt sexual gratification. E.H. and L.B. both testified that T.B. sent them a photo of his erect penis. Soon after that, he pestered both girls for sexually explicit pictures in response. T.B.'s personal involvement in soliciting the photos, his repeated requests for them, and the sexual banter in the text messages accompanying those requests demonstrate that T.B.'s "overt sexual gratification" was the whole point of these text exchanges.[14] Given the content of the photos and the context in which they were created and sent to T.B., we conclude there was sufficient evidence that these nude

_____

[14] We emphasize that T.B. was not prosecuted for merely *asking* the girls to send him nude selfies. Our point is that T.B.'s solicitation of the photographs for his own sexual gratification further demonstrates he was a "person involved" in their creation, which goes to whether the images constituted "erotic nudity."

27

images were "for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved" and thus constituted erotic nudity for purposes of section 18-6-403(2)(d).

¶54 In sum, the sexually explicit content of the photos and the circumstances surrounding their creation, including T.B.'s direct and repeated solicitation of them, demonstrate they were made for the purposes of T.B.'s "overt sexual gratification." Thus, we conclude that the evidence in the record, viewed in the light most favorable to the prosecution, was substantial and sufficient to support the trial court's conclusion that the photos constituted erotic nudity for purposes of the sexual exploitation statute.

## III. Conclusion

¶55 We are cognizant that our holding today may strike some as unfair, especially given the recent changes in the law addressing juvenile sexting behavior. However, we must apply the law in effect at the time of T.B.'s conduct. We hold that section 18-6-403(3) need not be read to limit sexually exploitative material to images that depict "an act or acts of sexual abuse of a child." Such a limitation is neither warranted by the plain language of the statute nor required to avoid First Amendment concerns. We further hold that the sexually explicit content of the photos and the circumstances surrounding their creation, including T.B.'s repeated requests for them, demonstrate they were made for the purpose of T.B.'s "overt sexual gratification," and the trial court therefore properly considered them erotic nudity for purposes of the sexual exploitation statute. Accordingly, we affirm the judgment of the court of appeals upholding T.B.'s adjudication.

28

**JUSTICE GABRIEL** dissents, and **JUSTICE HART** joins in the dissent.

JUSTICE GABRIEL, dissenting.

¶56    In this juvenile delinquency proceeding, the juvenile and two teenage girls with whom he had had relationships texted nude selfies to one another. Despite the facts that sexting like this has become common in our society and that the juvenile and the girls engaged in the same conduct, the prosecution charged the juvenile (but not the girls) with conduct that, if committed by an adult, would amount to sexual exploitation of a child. The juvenile was adjudicated a delinquent, and the majority today upholds his adjudication, forever branding him as a sex offender, notwithstanding the fact that if the same acts were committed today, the juvenile would be subject to nothing more than a civil infraction. *See* § 18-7-109(3), C.R.S. (2018).

¶57    Unlike the majority, I do not believe that the prosecution established that the juvenile committed sexual exploitation of a child. Moreover, I am concerned that the majority's construction of the sexual exploitation statute gives rise to a number of constitutional infirmities.

¶58    Accordingly, I respectfully dissent.

## I. Analysis

¶59    The majority has laid out the pertinent facts in this case. Accordingly, I begin by setting forth our standard of review and the applicable rules of statutory construction. I then proceed to discuss why, in my view, the juvenile has not committed sexual exploitation of a child within the meaning of the version of section 18-6-403, C.R.S. (2017),

1

at issue here. I conclude by explaining why I believe the majority's construction of that statute creates constitutional problems.

## A. Standard of Review and Principles of Statutory Construction

¶60 We review issues of statutory interpretation de novo. *Doubleday v. People*, 2016 CO 3, ¶ 19, 364 P.3d 193, 196. In construing a statute, our primary purpose is to ascertain and give effect to the legislature's intent. *Id.* To do so, we look first to the language of the statute, giving its words and phrases their plain and ordinary meanings. *Id.* We read statutory words and phrases in context, and we construe them according to the rules of grammar and common usage. *Id.*

¶61 We must also endeavor to effectuate the purpose of the legislative scheme. In doing so, we read that scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts, and we must avoid constructions that would render any words or phrases superfluous or lead to illogical or absurd results. *Id.* at ¶ 20, 364 P.3d at 196. If the statute is unambiguous, then we need look no further. *Id.*

## B. Section 18-6-403

¶62 Section 18-6-403(3)(b.5) provides that a person commits sexual exploitation of a child if, as pertinent here, he or she knowingly "[p]ossesses or controls any sexually exploitative material for any purpose."

¶63 "Sexually exploitative material" is defined as "any photograph, motion picture, video, recording or broadcast of moving visual images, print, negative, slide, or other mechanically, electronically, chemically, or digitally reproduced visual material that

2

depicts a child engaged in, participating in, observing, or being used for explicit sexual conduct." § 18-6-403(2)(j).

¶64 "Explicit sexual conduct," in turn, means "sexual intercourse, erotic fondling, erotic nudity, masturbation, sadomasochism, or sexual excitement." § 18-6-403(2)(e).

¶65 And, pertinent here, "erotic nudity" is defined as

> the display of the human male or female genitals or pubic area, the undeveloped or developing genitals or pubic area of the human male or female child, the human breasts, or the undeveloped or developing breast area of the human child, for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved.

§ 18-6-403(2)(d).

¶66 My difference of opinion with the majority principally stems from its definition of the above-quoted phrase, "one or more of the persons involved." Relying on our opinion in *People v. Batchelor*, 800 P.2d 599 (Colo. 1990), the majority opines that the juvenile was a "person involved" within the meaning of the above-quoted definition of "erotic nudity." Maj. op. ¶¶ 49–52. The majority then concludes that substantial and sufficient evidence in the record supported the trial court's conclusion that the photos constituted erotic nudity for purposes of the sexual exploitation statute. *Id.* at ¶ 54. Because in my view the majority's conclusion is inconsistent with *Batchelor* and effectively reads the phrase "of one or more of the persons involved" out of section 18-6-403(2)(d), I respectfully disagree with that conclusion.

¶67 In *Batchelor*, 800 P.2d at 600, the defendant went into his sleeping nine-year-old daughter's bedroom, pulled her panties down, took a photo, and then changed her position and took several more photos. He was charged and convicted of one count of

3

sexual exploitation of a child on the theory that his photographs depicted "erotic nudity" within the meaning of section 18-6-403(2)(d).

¶68 The defendant challenged his conviction, arguing that in order for material to constitute "erotic nudity," the material must depict the person photographed in a condition of real or simulated overt sexual gratification or stimulation. *Id.* at 603. We disagreed. *Id.* As pertinent here, we observed that the statute does not require that the "real or simulated overt sexual gratification or stimulation" be depicted in the material. *Id.* at 604. We further stated that (1) the "involved" person or persons "are not always depicted in the material" and (2) "if the sexual gratification is of a person not in the material, the sexual gratification of that person need not be shown in the material." *Id.* We then concluded, on the facts there before us, that "the overt sexual gratification was of [the defendant], *the maker of the photograph*." *Id.* (emphasis added).

¶69 The majority sees no meaningful difference between the defendant's conduct in *Batchelor* and that of a person who verbally instructs a child to assume the same erotic pose and take a nude selfie for the same purpose. Maj. op. ¶ 51. Nor does the majority see a distinction between the defendant's conduct in *Batchelor* and that of a defendant who uses electronic media to solicit or orchestrate such photographs. *Id.* at ¶ 52. The majority thus concludes that substantial and sufficient evidence supported the trial court's conclusion that the photos constituted "erotic nudity" within the meaning of section 18-6-403(2)(d). *Id.* at ¶ 54. For several reasons, I disagree.

¶70 First, no evidence in this case supports the majority's suggestion that the juvenile here verbally instructed the girls involved to assume any particular erotic pose. Nor did

4

he in any way "orchestrate" the photos at issue. The evidence shows that he did no more than request that the girls send him nude selfies.

¶71 Second, although the majority sees no material difference between the defendant's conduct in *Batchelor* and the juvenile's conduct here, I believe that the actions are distinguishable and that the difference is dispositive.

¶72 In my view, under any definition of "person involved," one who stages and then takes photographs of a child for his or her sexual gratification (i.e., one who is the "maker" of a photograph) is "involved" in the display of the child's body. *See, e.g., Involve*, Webster's Third New International Dictionary (2002) (defining "involve," in pertinent part, to mean "to draw in as a participant").

¶73 In contrast, under any potentially applicable definition of the term "involved," I do not believe that a juvenile who merely asks two girls who are not in his presence to send him nude photographs of themselves can be said to be "involved" in the displays of the girls' bodies. *See id.* In those circumstances, the juvenile did not in any way "make" the depictions, as the defendant did in *Batchelor*. Nor was he a participant in the depictions. And he did not cause the depictions to be made or stage the depictions against the girls' will or without their consent. The girls took and sent the photographs, and no one forced them to do so.

¶74 Finally, the majority's ultimate conclusion that substantial and sufficient evidence supported the juvenile's adjudication here because "the sexually explicit content of the photos and the circumstances surrounding their creation, including [the juvenile's] direct and repeated solicitation of them, demonstrate they were made for the purposes of the

5

juvenile's 'overt sexual gratification,'" maj. op. ¶ 54, indicates that the majority has effectively read the phrase "of one or more of the persons involved" out of section 18-6-403(2)(d).

¶75    Specifically, the majority appears to read that provision to define "erotic nudity" as

> the display of the human male or female genitals or pubic area, the undeveloped or developing genitals or pubic area of the human male or female child, the human breasts, or the undeveloped or developing breast area of the human child, for the purpose of real or simulated overt sexual gratification or stimulation ~~of one or more of the persons involved~~.

or

> the display of the human male or female genitals or pubic area, the undeveloped or developing genitals or pubic area of the human male or female child, the human breasts, or the undeveloped or developing breast area of the human child, for the purpose of real or simulated overt sexual gratification or stimulation of ~~one or more of the persons involved~~ <u>the person who solicited the material</u>.

¶76    We, however, are not at liberty to rewrite a statute, nor may we construe it so as to render any of its terms meaningless. *See Doubleday*, ¶ 20, 364 P.3d at 196; *see also Turbyne v. People*, 151 P.3d 563, 567 (Colo. 2007) ("We do not add words to [a] statute or subtract words from it."). In my view, that is what the majority has done here.

¶77    For these reasons, I would conclude that the juvenile was not a "person involved" in the depiction of the girls' bodies here and that therefore the evidence against him was legally insufficient to support his adjudication for sexual exploitation of a child.

6

## C. Constitutional Concerns

¶78 Although my analysis is based on the plain language of the sexual exploitation of a child statute, I feel compelled to note that, unlike the majority's construction, my interpretation of the statute avoids constitutional infirmities. The majority's broad construction, in contrast, implicates overbreadth, vagueness, and equal protection concerns, and I briefly explain why.

¶79 "The overbreadth doctrine addresses the concern that the scope of a law may be so broad that it restricts speech protected by the First Amendment or has a chilling effect on such constitutionally protected speech." *People v. Graves*, 2016 CO 15, ¶ 12, 368 P.3d 317, 322.

¶80 In considering a facial challenge to a statute on the ground that it is overbroad, courts first must determine "whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982) (footnote omitted).

¶81 Here, construing section 18-6-403 so broadly as to encompass a teenager's request that another teenager send a nude selfie strikes me as potentially implicating a juvenile's right to free speech. This is particularly true here, where the conduct did not involve any sort of physical manipulation or compulsion but rather encompassed a group of teenagers doing what teenagers often—albeit perhaps foolishly—do, namely, text nude selfies to one other.

¶82 Similarly, I am concerned that the majority's reading of "person involved" is so broad as to render it meaningless, thereby creating a constitutional vagueness problem. A criminal statute is unconstitutionally vague when it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). Thus, the vagueness doctrine requires that a criminal statute "be framed with sufficient clarity to alert all who are subject to its sanctions to the nature of the proscribed behavior and to inform them of permissible standards of conduct, that they may conduct themselves accordingly." *People v. Randall*, 711 P.2d 689, 691 (Colo. 1985).

¶83 Here, given the breadth of the majority's construction of the phrase "person involved," I fear that those subject to the statute can no longer know what conduct the statute will now be deemed to cover.

¶84 Finally, I am concerned that the majority's construction of the statute creates equal protection problems. Equal protection concerns are implicated when the prosecution selectively enforces a statute based on a prohibited standard such as race, religion, or some other arbitrary classification. *See Dean v. People*, 2016 CO 14, ¶ 14, 366 P.3d 593, 597. In addition, "[w]here two statutes provide disparate penalties for similar criminal conduct, equal protection guarantees are violated." *People v. Montoya*, 582 P.2d 673, 675 (Colo. 1978).

¶85 Here, the juvenile and both of the girls who were involved engaged in the same conduct, yet only the juvenile was charged. For me, this raises the specter of selective enforcement of this statute based on gender. Moreover, I am troubled by the fact that,

8

based solely on timing, a person in the juvenile's position faces either an adjudication that will brand him as a sex offender (and require him to register as such) or simply a civil penalty. To me, this vast difference in consequences presents serious equal protection concerns.

¶86 For these reasons, I would conclude that the prosecution has not established that the juvenile committed sexual exploitation of a child.

## II. Conclusion

¶87 I anticipate that when many read or learn of the majority's opinion in this case, they will be surprised by the result. Although to be sure, the proper application of the law in a given case can sometimes produce a result that some would deem counterintuitive, I do not believe that this should be such a case. In my view, under the plain language of section 18-6-403, the acts of sexting that occurred here do not constitute sexual exploitation of a child, and the juvenile should not be branded as a sex offender for having participated in such foolish—albeit not uncommon—acts. Moreover, for the reasons discussed above, I believe that the majority's interpretation of the statute creates constitutional infirmities that a proper (and narrower) construction would avoid.

¶88 For these reasons, I would reverse the judgment of the division below, and therefore I respectfully dissent.

I am authorized to state that JUSTICE HART joins in this dissent.