# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-KA-01651-SCT

*WILLIAM LEE WHITTAKER, II a/k/a WILLIAM L.*
*WHITTAKER, II a/k/a WILLIAM LEE*
*WHITTAKER a/k/a WILLIAM WHITTAKER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/18/2017 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| TRIAL COURT ATTORNEYS: | DAVID CARSON FUTCH |
| | WILLIAM CARL BARRETT |
| | JUSTIN MICHAEL LOVORN |
| | CAROLYN ANN LEWIS |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | ANTHONY N. LAWRENCE, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/24/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., CHAMBERLIN AND ISHEE, JJ.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.     William Whittaker was convicted of four counts relating to the sexual abuse of his six-year-old daughter, Betty.[1]   On appeal, Whittaker claims he received constitutionally

---

[1] An alias is used to protect the identity of the minor victim of sexual abuse.

ineffective assistance of counsel because his defense attorney did not insist on certain redactions from the recording and transcript of his partial confession, in which Whittaker refused to take a polygraph test and discussed a prior sex-offense conviction. But the exhibits used at trial *were* redacted; it appears Whittaker's appellate counsel has confused them with the unredacted exhibits admitted at the suppression hearing. Whittaker also contends his partial confession should have been suppressed as involuntary, but his theory on appeal is entirely different from the one he advanced at trial and is therefore procedurally barred. We affirm Whittaker's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2.     Betty's mother and Whittaker never married, and they separated in 2011 when Betty was about three years old. At first, Betty lived with Whittaker and his parents; she and Whittaker shared a bedroom. Betty went to live with her mother shortly before she started kindergarten in 2012. From that point, Betty stayed with Whittaker two or three weekends a month. She continued to sleep in Whittaker's bedroom when she stayed with him.

¶3.     In September 2014, when Betty was six years old, she mentioned to her mother that she had been bleeding from her vagina. When Betty's mother tried to investigate, Betty screamed and resisted. Her mother saw this as very unusual behavior, which led her to ask Betty whether anyone had been touching her. Betty initially denied any sexual contact, but eventually she agreed to tell "Daddy's secret." Betty subsequently described various acts of

2

sexual abuse to her mother and, later, to a forensic interviewer. She ultimately testified at trial to substantially the same acts.

¶4. After Whittaker was arrested, he was interviewed by police investigators. The interview lasted about an hour and a half. The circumstances surrounding Whittaker's statement will be discussed more thoroughly below, but ultimately Whittaker admitted he had, on two occasions, touched his daughter's genitals with his hands in a sexual manner. He also accused the child of having tried to initiate a sexual encounter by sitting on his face while he was sleeping and telling him to kiss her genitals.

¶5. Whittaker was charged with one count of gratification of lust and three counts of sexual battery, which alleged separately that Whittaker had penetrated his daughter's vagina with his fingers, tongue, and penis. He was convicted on all counts at trial and was sentenced to thirty years on each of the sexual battery counts, to be served day for day, and to fifteen years on the gratification of lust count. All of the sentences were ordered to be served concurrently.

## DISCUSSION

### 1. Voluntariness of Confession

¶6. Whittaker contends on appeal that his confession was involuntary because it was induced by the investigators' promises to try to help Whittaker get treatment or therapy for what Whittaker called the "impulse" that led him to molest his daughter. This argument is entirely different from the one Whittaker made to the trial court and is unsupported by

3

Whittaker's own testimony at the suppression hearing, where Whittaker was asked why he confessed and never mentioned promises of any sort. Because Whittaker never presented these claims to the trial court, they are procedurally barred on appeal.

¶7. Whittaker's suppression motion consisted of only three paragraphs and just one specific allegation: "The *Miranda* form signed by the Defendant was not understood in [its] entirety." The other claims lacked the required specificity or were not pursued at the suppression hearing—that Whittaker's confession was obtained illegally and that there had been violations of Whittaker's right to remain silent, "[his] constitutional rights under the 4th and 6th Amendment and 14th Amendment [to] the United States Constitution," and his rights under "Article 3, Section 23 of the Mississippi Constitution."

¶8. Whittaker's brief testimony at the suppression hearing was not entirely limited to the *Miranda* waiver, but what happened during the interview was relevant to the voluntariness of the *Miranda* waiver that preceded it. *See Roberts v. State*, 234 So. 3d 1251, 1261 (Miss. 2017). Whittaker was asked why he confessed, but he never claimed he was induced by promises of treatment or therapy. Instead, he said he was exhausted because he had stayed up all night talking with his girlfriend, who lived in Australia. Whittaker claimed he was surprised by the allegations and rattled by the officers' refusal to accept his denials. He said the officers tried to confuse him and suggested he would be less embarrassed by the allegations if he pled guilty and did not go to trial. But Whittaker never mentioned promises or threats of any sort.

4

¶9.    Whittaker's attorney also never mentioned promises; he contended only that confessing and signing the *Miranda* waiver were "not what [Whittaker] meant to do." His questions at the suppression hearing were mostly about the *Miranda* waiver. At the conclusion of the hearing, Whittaker's attorney offered no summation or closing argument.

¶10.    This Court faced a nearly identical situation in *Roberts v. State*, 234 So. 3d 1251, 1261-62 (Miss. 2017). Like Whittaker, Roberts had challenged only the validity of his *Miranda* waiver. *See id.* at 1262. This Court unanimously held that "[i]t is important to recognize that a clear distinction exists between the voluntariness of a waiver of *Miranda* and the voluntariness of a confession itself under both the federal Due Process Clause and Mississippi law." *Id.* at 1261 (quoting *Keller v. State*, 138 So. 3d 817, 850 (Miss. 2014)). Just as in this case, the defendant's "arguments challenging the admissibility of his confession before the trial court were limited wholly to *Miranda*; he never argued that his confession was involuntary because it had been induced by threats or promises, or for any other reason." *See id.* at 1262; *see also Fleming v. State*, 604 So. 2d 280, 292 (Miss. 1992) ("[A]n objection on one or more specific grounds constitutes a waiver of all other grounds.").

¶11.    The *Roberts* Court went on to hold that, "[r]egarding appellate review of the admission of a confession . . . asserting grounds for an objection on appeal that differ from the ground given for the objection at the trial level does not properly preserve the objection for appellate review." *Roberts*, 234 So. 3d at 1262 (quoting *Woodham v. State*, 779 So. 2d 158, 161 (Miss. 2001)). "Although the trial court made a finding that Roberts's confession

5

was voluntary, his failure to argue before the trial court that coercive promises induced his rights waiver or his confession procedurally bars this issue on appeal." *Id.*

¶12.    Whittaker's case is solidly on all fours with **Roberts**, and we reach the same result—the claim that Whittaker's confession was induced by promises was never presented to the trial court, so it is procedurally barred.  Whittaker has not challenged the voluntariness of his **Miranda** waiver as he did at trial, and so he has failed to show any error in the trial court's decision to admit his partial confession.

## 2.  Ineffective Assistance of Counsel

¶13.    In his remaining issue, Whittaker alleges his defense attorney was constitutionally ineffective for failing to object to the admission at trial of unredacted video recordings and transcripts of his interview, where the police investigators questioned Whittaker about a prior sex-offense conviction and unsuccessfully urged Whittaker to take a polygraph test to support his initial denials.  Defense counsel initially sought to suppress the confession, but after the suppression motion was denied, he never raised the issue of redaction on the record.  Nonetheless, it is clear from the record that the transcript and recording of the confession entered into evidence at trial *were* redacted.

¶14.    Three sets of exhibits appear in the record—one set from the trial, one set from the suppression hearing, and one set from a second pretrial hearing.  The exhibit numbers for the video and transcript were the same at both the suppression hearing and the trial, and all the exhibits from trial and the pretrial hearings were commingled in the same envelope in the

record on appeal. Whittaker's appellate counsel apparently confused the exhibits or failed to recognize that one set is redacted.

¶15. At the outset, we note that in the record as it was originally sent up on appeal, black-and-white photocopies had been substituted for many of the original exhibits, including the two transcripts of Whittaker's interview. The exhibit stickers are not legible on many of the photocopied exhibits. This Court, on its own motion, directed the trial court clerk to supplement the record with the originals of all the exhibits, and that has been done. While most of the exhibits were not dated, the State's exhibits that were unambiguously used at the suppression hearing have gray-colored exhibit stickers, while those that were clearly used at the later hearing and the trial were marked with red stickers. The original unredacted interview transcript has a gray sticker (consistent with it being used at the suppression hearing), while the redacted transcript has a red sticker (consistent with it being used at trial). Furthermore, both transcripts are Bates stamped, and the Bates numbers of the unredacted transcript were referenced repeatedly during the suppression hearing. The unredacted transcript is also the only exhibit in the record which is dated—it has a date handwritten on the exhibit sticker on its first page—"7-7-16." The suppression hearing was actually held on a later date (August 8, 2016), but it was, at one point, scheduled for July 7, 2016. The trial was held much later. Nothing in the record suggests the unredacted interview transcript was introduced at trial or otherwise published to the jury.

7

¶16. There is no serious possibility of confusion regarding the audio/video exhibits. At the suppression hearing, two DVDs were introduced as S2-A and S2-B, each of which had a gray sticker and contained half of the unredacted video of the interrogation. At trial, two DVDs were introduced, labeled S2-ID and S2-A. Both were labeled with red exhibit stickers. S2-ID contains a redacted, audio-only recording that spans both halves of the interview, while S2-A contains both video and audio, also redacted, but again of the entire interview. It is obvious from the record which exhibits were used where and that only the redacted recordings were entered into evidence at trial.

¶17. It is presumed that Whittaker's defense attorney provided competent representation, and the burden is on Whittaker to show otherwise. *See **Swinney v. State***, 241 So. 3d 599, 613 (Miss. 2018). He has failed to do so.

¶18. "Ordinarily, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." ***Johnson v. State***, 235 So. 3d 1404, 1413 (Miss. 2017) (citation omitted). But a claim of ineffective assistance of counsel may be raised on direct appeal "if such issues are based on facts fully apparent from the record." Miss. R. App. P. 22(b). Here, the record affirmatively shows that the transcript and recording of the interview introduced in evidence at trial were redacted. We find that Whittaker's ineffective-assistance-of-counsel claim is based on facts fully apparent from the record and without merit.

**CONCLUSION**

¶19.     Whittaker's challenge to the voluntariness of his partial confession is procedurally barred on appeal, and his claim of ineffective assistance of counsel is based on appellate counsel's error regarding which exhibits were introduced at trial and which were only in evidence at the suppression hearing.  We affirm Whittaker's convictions and sentences.

¶20.     **AFFIRMED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR.**