# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00758-COA

**DENZEL SMITH**                                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/21/2019 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | QUITMAN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/08/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE WILSON, P.J., WESTBROOKS AND McDONALD, JJ.

### WILSON, P.J., FOR THE COURT:

¶1.     Following a jury trial in the Quitman County Circuit Court, Denzel Smith was convicted of two counts of burglary of a dwelling.  On appeal, Smith argues that the trial court erred by allowing a witness to testify that she identified Smith after she saw his Facebook profile picture.  We hold that the trial judge did not err based on the evidence before him at the time of his ruling.  We also hold that Smith waived his claim that the identification was tainted by improper police influence because Smith failed to assert such an objection during trial.  Therefore, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.     In the early morning hours of April 26, 2017, two nearby houses in Lambert were burglarized. Around 12:30 or 1 a.m., Chetonia Mays woke up and saw a man standing at her bedroom door. She screamed, and the man quickly ran out the back door and fled on foot. Mays called 911, and Officer Austin Hancock of the Lambert Police Department responded. Hancock found a chair propped under one of the home's rear windows, and the screen on the window had been cut and removed.

¶3.     Later that morning, John and Joyce Lewis, who lived about a block away from Mays, discovered that someone had broken into their house during the night by cutting through a plexiglass window and window screen. The Lewises' cell phones, which they had left on a dresser, were missing. John Lewis also testified that there was noticeably less gas in his car than there had been when he arrived home the night before.

¶4.     Hancock investigated the burglary of the Lewises' house and learned that their neighbor, Ashley Adams, had seen the burglar. Adams gave a written statement implicating Denzel Smith in the burglary. Adams's description of Smith's clothing and appearance was consistent with a description Mays had provided of the man who broke into her home.

¶5.     Smith was arrested at a relative's house in Lambert. When Hancock knocked on the front door of the house, the person who answered told him that Smith was not there. Smith then attempted to flee through a rear window of the house, but he was apprehended and placed under arrest.

¶6.     At Smith's trial, Adams testified that she heard a loud noise around 2 a.m. on April 26. She looked out her window and saw a man appear from behind the Lewises' house.

Adams could see the man clearly because there was light coming from a streetlight and from the Lewises' porch light. Adams identified the man as Denzel Smith. She knew Smith because she had gone to school with him for a number of years and had "hooked up" with him "once or twice" several years earlier.

¶7. Adams watched Smith walk to the trunk of the Lewises' car and then to the front door of the Lewises' house, but she could not see whether he went inside. Adams stopped watching Smith and went to bed because she assumed that Smith was "supposed to be there." She looked out her window again a few minutes later when she heard the Lewises' car start and drive away, but she could not see who was driving. A few minutes later, Adams heard the car return. She looked out her window again and saw Smith standing near the car.

¶8. At trial, Mays testified that the man who broke into her home was thin and about six feet tall, had a haircut "like a mohawk," and wore blue jeans and a red and blue coat. She stated that she was not able to see the man's face. Mays testified that after the burglary, she "did a little more investigating" and "called around," and "that's when names starting coming up." Defense counsel then objected on the grounds of hearsay and relevance, and the court sent the jury out.

¶9. Outside the presence of the jury, defense counsel eventually moved for a mistrial. However, the judge denied the motion, finding that Mays's brief testimony about her investigation and calling around did not warrant a mistrial. The judge and counsel then engaged in an extended discussion about what further testimony Mays could give, and the

judge ultimately allowed the State to make a proffer of Smith's additional testimony outside the presence of the jury. Mays testified that "the first time that [she] heard" Smith's name "was at the beauty shop." Mays testified that she then found Smith's Facebook page and identified him as the burglar from his profile picture. The judge ruled that Mays could testify that she identified Smith from his Facebook page but should not testify about anything specific that she heard at the beauty shop.

¶10. The trial resumed, and Mays's testimony on direct examination was consistent with her proffer. She testified that she first heard Smith's name at the beauty shop, not from law enforcement. She testified that she then found Smith's page on Facebook, "and when his profile picture came up, it was the person that was in [her] house." Mays then identified Smith in court as the burglar.

¶11. On cross-examination, defense counsel asked Mays whether she had already given the police a different name before she ever heard Smith's name or identified him as the burglar. Mays admitted that she had done some "investigating" the morning after the burglary and gave Police Chief Marvin Pryor the name "Jasper Booker." Mays testified that *Pryor* then suggested the name "Denzel Smith" and that she went to the beauty shop *after* Pryor suggested Smith's name. Mays testified that she heard Smith's name again from others at the beauty shop. Mays also testified that Pryor showed her photographs of both Booker and Smith and that she "picked [Smith] in front of Marvin Pryor." Mays stated that she had made a "mistake" in her testimony on direct examination and that she actually did see "a glimpse

4

of [the burglar's] face." Mays further testified:

> Q. So when somebody in the beauty shop said Denzel Smith, . . . Chief Pryor had already told you Denzel Smith; correct?
>
> A. Correct.
>
> Q. So when you heard it two times, that's when you went to Facebook?
>
> A. Well, yeah -- yes, sir.
>
> Q. All right. And then from looking at his Facebook page, after Chief Pryor had done already told you it's Denzel Smith --
>
> A. Correct.
>
> Q. -- that's when you made your positive identification; correct?
>
> A. Correct.

Mays ultimately testified that she was "100 percent sure" that Smith was the man whom she saw in her home.

¶12. After Mays's testimony concluded and the jury left the courtroom, the judge stated that Mays's testimony was not what he expected. The judge stated that he had been "under the impression" that Mays would testify that she first heard Smith's name at the beauty shop, that she then found Smith on Facebook and identified him from his profile picture, and that she then gave Smith's name to law enforcement. The judge asked why he had been "left with that impression" after the hearing outside the presence of the jury. The assistant district attorney (ADA) answered, "Your Honor, because that was the impression that I ha[d], and I think that the transcript would support that when I initially asked her, on my direct

5

examination, that was the testimony she gave." The judge asked, "What happened?" The ADA agreed that Mays's testimony changed on cross-examination. The ADA stated that she asked for a proffer in part because she wanted to make sure that Mays first heard Smith's name at the beauty shop. The ADA pointed out that that was Mays's testimony both in her proffer and again on direct examination. The judged stated, "Well, it certainly took a turn." The ADA stated, "Well, your Honor, it was a surprise turn for us all." The proceedings then concluded for the day with no further discussion of the issue.

¶13. At the conclusion of trial, the jury found Smith guilty of two counts of burglary of an occupied dwelling.[1] The court sentenced Smith to twelve years in the custody of the Department of Corrections, with five years suspended and seven years to serve.

**ANALYSIS**

¶14. On appeal, Smith argues that Mays's identification of him from his Facebook profile picture was the equivalent of an impermissible "suggestive lineup or suggestive show-up identification" because Chief Pryor had previously suggested his name to Smith. This argument fails because Smith did not raise the issue at trial, and the trial judge did not err by allowing Mays's testimony based on her testimony during her proffer.

¶15. In some cases, due process may require the exclusion of an eyewitness identification "when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." *Perry v. New Hampshire*, 565 U.S. 228, 232

---

[1] Smith was also indicted for automobile theft for taking the Lewises' car, but the jury found him not guilty of that count.

(2012). "An identification infected by improper police influence . . . is not automatically excluded." *Id.* A trial judge should exclude the identification only if improper police influence created "a very substantial likelihood of irreparable misidentification." *Id.* (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). But identification evidence should be admitted if its "indicia of reliability . . . outweigh the corrupting effect of the police-arranged suggestive circumstances." *Id.* The trial judge must consider the "totality of the circumstances" and the so-called "*Biggers* factors" to determine whether improper police influence requires the suppression of an eyewitness identification. *Id.* at 238-40 & n.5 (discussing *Neil v. Biggers*, 409 U.S. 188 (1972)).

¶16. However, not "all suggestive circumstances raise due process concerns warranting a pretrial ruling." *Id.* at 232 n.1. No such "pretrial screening for reliability" is required in "cases in which the suggestive circumstances" surrounding an identification "were not arranged by law enforcement officers." *Id.* at 232. This is because "what triggers due process concerns is *police use* of an unnecessarily suggestive identification procedure." *Id.* at 232 n.1 (emphasis added). If an identification is not tainted by any improper police influence, then it is up to the jury—not the judge—to determine whether the identification is reliable. *Id.* at 245. In such cases, the defendant is protected by other safeguards, such as his right to confront and cross-examine the witness with the assistance of counsel. *Id.* at 245-46; *accord Ward v. State*, 283 So. 3d 258, 262 (¶15) (Miss. Ct. App. 2019).

¶17. In this case, Mays's proffer testimony did not reveal any improper police influence.

In her proffer, Mays specifically testified that she first heard Smith's name at the beauty shop and then took it upon herself to look up Smith on Facebook. Therefore, the trial judge's ruling was correct based on the evidence before him when he ruled.

¶18. Moreover, Smith's argument on appeal was not presented to the trial judge. On appeal, Smith argues that Mays's identification was tainted by Chief Pryor's suggestion that Smith was the burglar and that the identification should have been excluded based on an application of the *Biggers* factors. However, Smith did not make this argument in the trial court. Smith initially asserted a hearsay objection to Mays's testimony, and he never articulated an objection based on due process, the *Biggers* factors, or improper police influence. It is well-settled that "an objection on one or more specific grounds constitutes a waiver of all other grounds." *Fleming v. State*, 604 So.2d 280, 292 (Miss. 1992); *accord, e.g.*, *Whittaker v. State*, 262 So. 3d 531, 534 (¶¶10-12) (Miss. 2019). In addition, "[c]onstitutional arguments not asserted at trial are waived." *Fleming*, 604 So. 2d at 292. "This Court cannot find that a trial judge committed reversible error on a matter not brought before him or her to consider." *Smith v. State*, 986 So. 2d 290, 295 (¶13) (Miss. 2008). Because Smith failed to assert an objection during trial based on improper police influence or the *Biggers* factors, the issue is procedurally barred on appeal.

¶19. There is a good reason that such an objection must be asserted at trial. As discussed above, an identification made under impermissibly suggestive circumstances is not per se inadmissible. *Whitlock v. State*, 47 So. 3d 668, 672 (¶9) (Miss. 2010). Rather, if such an

objection is raised, the *trial judge* must consider the evidence and the *Biggers* factors and make a preliminary finding of fact as to whether, "considering the totality of the circumstances," the identification procedures created "a very substantial likelihood of misidentification." *Id.* at 671-72 (¶¶8-9) (quoting *Roche v. State*, 913 So. 2d 306, 311 (¶14) (Miss. 2005)). "[A]n accused who seeks to exclude identification testimony based upon an alleged due process violation faces a very heavy burden." *Id.* at 673 (¶15) (quoting *York v. State*, 413 So. 2d 1372, 1384 (Miss. 1982)). And the *trial judge's* findings on this issue will not be disturbed if they are supported by "substantial credible evidence." *Id.* at 672 (¶8) (quoting *Outerbridge v. State*, 947 So. 2d 279, 282 (¶8) (Miss. 2006)). That is, the "*trial court's ruling* on the admissibility of a witness identification is reviewed for clear error." *McDowell v. State*, 807 So. 2d 413, 419 (¶12) (Miss. 2001) (emphasis added). In the present case, because Smith failed to raise this issue at trial, the trial judge did not make any findings of fact or any ruling that an appellate court can review. This Court cannot review findings or rulings on issues that the trial judge was never called upon to address. *See Triplett v. State*, 264 So. 3d 808, 816-18 (¶¶27, 34-35) (Miss. Ct. App. 2018), *cert. denied*, 265 So. 3d 180 (Miss. 2019). As a result, Smith's argument on appeal is procedurally barred.

¶20. We also note that the trial judge in this case provided Smith with a prime opportunity to make the argument that he now raises for the first time on appeal. As discussed above, the trial judge's initial ruling was correct based on Mays's proffer (as well as her testimony on direct examination), but Mays's testimony changed significantly under cross-examination.

9

It was Mays's testimony on cross-examination that created the issue that Smith raises on appeal. After Mays's testimony ended and outside the presence of the jury, the trial judge expressed surprise about the change in Mays's testimony and pressed the State for an explanation as to the reason for it. At this point, the issue was teed up for Smith. He could have moved for a mistrial or asked the trial judge to strike and instruct the jury to disregard Mays's identification testimony. But Smith did neither. He simply proceeded with the trial. Perhaps this was a strategic decision. Mays had been fairly well impeached on cross-examination, and counsel may have thought it was better to "take his chances with the jury on a favorable verdict" than to move for a mistrial. *Blackwell v. State*, 44 So. 2d 409, 410 (Miss. 1950). However, such a decision waives the issue on appeal. *Id.*

## CONCLUSION

¶21. The trial judge's ruling that Mays could testify about her identification of Smith via Facebook was correct based on the evidence before the judge at the time of his ruling. Smith waived his due process objection to the identification by failing to raise the issue at trial.

¶22. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, LAWRENCE AND McCARTY, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**